LUIS A. CARRILLO (SBN 70398)
MICHAEL S. CARRILLO (SBN 258878)
**CARRILLO LAW FIRM, LLP**
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
Tel: (626) 799-9375
Fax: (626) 799-9380

Dale K. Galipo, Esq. Bar No. 144074
**LAW OFFICES OF DALE K. GALIPO**
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818)347-3333
Email: dalekgalipo@yahoo.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARGARITO T. LOPEZ, SONIA TORRES, KENI LOPEZ, ROSY LOPEZ,**<br><br>*PLAINTIFFS*,<br><br>v.<br><br>**CITY OF LOS ANGELES,  JOSE ZAVALA,  JULIO QUINTANILLA, AND DOES 1 THROUGH 10, INCLUSIVE**<br><br>*DEFENDANTS*. | **CASE NO:  2:22-cv-7534**<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. Fourth Amendment – Excessive Force (42 U.S.C. § 1983)<br>2. Fourth Amendment – Denial of Medical Care (42 U.S.C. § 1983)<br>3. Fourteenth Amendment--Substantive Due Process-Interference with Familial Relationships (42 U.S.C. § 1983)<br>4. Substantive Due Process Deliberate Indifference to Serious Medical Needs (42 U.S.C. § 1983)<br>5. Municipal Liability – Ratification (42 U.S.C. § 1983)<br>6. Municipal Liability – Failure to Train (42 U.S.C. § 1983) |

7.  Municipal Liability – Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)
8.  Negligence (Wrongful Death)
9.  Battery (Wrongful Death/Survival)
10. Negligent Infliction of Emotional Distress, Bystander
11. Violation of Bane Act (Cal. Civil Code § 52.1)

**[DEMAND FOR JURY TRIAL]**

## COMPLAINT FOR DAMAGES

PLAINTIFFS **MARGARITO T. LOPEZ, SONIA TORRES and KENI LOPEZ, ROSY LOPEZ**, in each case individually and as to MARGARITO T. LOPEZ, as a successor-in-interest to the DECEDENT, MARGARITO EDVIN LOPEZ (collectively, "PLAINTIFFS"), for their Complaint against the **CITY OF LOS ANGELES, JOSE ZAVALA, JULIO QUINTANILLA,** and **DOES 1 THROUGH 10**, inclusive, (collectively, "DEFENDANTS") hereby allege as follows:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because PLAINTIFFS assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

2.      This Court has supplemental jurisdiction over PLAINTIFFS' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because DEFENDANTS reside in the Central District of California, and all incidents, events, and occurrences giving rise to this action occurred in the Central District.

**INTRODUCTION**

4.     This civil rights and state tort action seeks compensatory damages from DEFENDANTS for violating various rights under the United States Constitution, the Federal Tort Claims Act, and state law in connection with the fatal deputy-involved shooting of PLAINTIFFS', son, and brother, MARGARITO EDVIN LOPEZ, on December 18, 2021. PLAINTIFFS allege that MARGARITO EDVIN LOPEZ's death was a result of the excessive use of deadly force of DEFENDANTS DOES 1-10; and was also a result of DEFENDANTS' failure to provide reasonable medical care to DECEDENT despite DECEDENT's serious mental health condition; and was a result of DEFENDANTS' deliberate indifference to DECEDENT'S serious mental health needs and medical emergency.

5.     The policies and customs behind shootings of civilians such as MARGARITO EDVIN LOPEZ, and failure to provide reasonable medical care, are fundamentally unconstitutional and have violated the civil rights of residents of the CITY, such as Plaintiffs and DECEDENT. Accordingly, PLAINTIFFS herein seek by means of this civil rights action to hold accountable those responsible for the death of MARGARITO EDVIN LOPEZ, and to challenge the unconstitutional policies and practices of the CITY and all DEFEDANTS.

**PARTIES**

6.     At all relevant times, **MARGARITO EDVIN LOPEZ** ("DECEDENT") was an individual residing in the CITY of LOS ANGELES, California.

7.     At all relevant times, **MARGARITO T. LOPEZ.** ("MARGARITO T."), was and is an individual residing in the CITY of LOS ANGELES, State of California. MARGARITO T. is the father of DECEDENT. MARGARITO T. sues both in his individual capacity for wrongful death damages as the father of DECEDENT and in a representative capacity as DECEDENT's successor-in-interest pursuant to California Code

of Civil Procedure § 377.60. MARGARITO T. seeks wrongful death damages under federal and state law.

8.     At all relevant times, **SONIA TORRES** was and is an individual residing in the CITY of LOS ANGELES, State of California. SONIA TORRES is the biological sister of DECEDENT.

9.     At all relevant times, **KENI LOPEZ** was and is an individual residing in the CITY of LOS ANGELES, State of California. KENI LOPEZ is the biological brother of DECEDENT.

10.     At all relevant times, **ROSY LOPEZ**, was and is an individual residing in the CITY of LOS ANGELES, State of California. ROSY LOPEZ is the biological sister of DECEDENT.

11.     The **CITY OF LOS ANGELES** ("CITY") is, a municipal corporation existing under the laws of the State of California. CITY is a chartered subdivision of the State of California with the capacity to be sued. CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Los Angeles Police Department and its agents and employees.

12.     Defendant City of Los Angeles Police **OFFICER JOSE ZAVALA,** is a residents of Los Angeles County, and at all times mentioned herein was acting under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, and customs, of the Los Angeles Police Department, and under the color of the statutes, regulations, and laws of the state of California. Defendant Officer Jose Zavala was acting within his capacity as employee, agent, representative, and servant of the Defendant CITY.

13.     Defendant City of Los Angeles Police **OFFICER JULIO QUINTANILLA,** is a residents of Los Angeles County, and at all times mentioned herein was acting under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, and customs, of the Los Angeles Police Department, and under the color of the statutes,

regulations, and laws of the state of California. Defendant Officer Jose Zavala was acting within his capacity as employee, agent, representative, and servant of the Defendant CITY.

14.     DEFENDANTS, **DOES 1-5 ("DOE OFFICERS")** are police officers employed by the LAPD. DOE OFFICERS were acting under color of law and within the course and scope of their employment as officers for the LAPD.  DOE OFFICERS were acting with the complete authority and ratification of their principal, Defendant CITY.

15.     Defendants DOES 6-8 are supervisory officers for the LAPD who were acting under color of law and within the course and scope of their employment as police officers for the LAPD.  DOES 6-8 were acting with the complete authority and ratification of their principal, Defendant CITY.

16.     Defendants DOES 9-10 are managerial, supervisorial, and policymaking employees of CITY, who were acting under color of law and within the course and scope of their duties as managerial, supervisorial, and policymaking employees of CITY.  DOES 9-10 were acting with the complete authority and ratification of their principal, Defendant CITY.

17.     On information and belief, Defendants DOES 1-10 were residents of the City of Los Angeles.

18.     In doing the acts and failing and omitting to act as hereinafter described, Defendants DOE OFFICERS were acting on the implied and actual permission and consent of Defendants CITY  and DOES 6-10.

19.     In doing the acts and failing and omitting to act as hereinafter described, Defendants DOES 1-10 were acting on the implied and actual permission and consent of the CITY.

20.     The true names and capacities, whether individual, corporate, association or otherwise of Defendants DOES 1-10, inclusive, are unknown to Plaintiffs, who as a result sues these Defendants by such fictitious names.  Plaintiffs will seek leave to amend this complaint to allege the true names and capacities of these Defendants when they have been

ascertained.  Each of the fictitiously-named Defendants is responsible in some manner for the conduct or liabilities alleged herein

21.    The true names and capacities, whether individual, corporate, association or otherwise of DEFENDANTS DOES 1-10, inclusive, are unknown to PLAINTIFFS, who otherwise sues these DEFENDANTS by such fictitious names. PLAINTIFFS will seek leave to amend their complaint to show the true names and capacity of these DEFENDANTS when they have been ascertained. Each of the fictitiously named DEFENDANTS is responsible in some manner for the conduct or liabilities alleged herein.

22.    At all times mentioned herein, each and every DEFENDANT was the agent of each and every other DEFENDANT. All of the acts complained of herein by PLAINTIFF against DEFENDANTS were done and performed by said DEFENDANTS by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment CITY. Moreover, DEFENDANTS and their agents ratified all of the acts complained of herein.

23.    Defendants DOES 1-10 are sued in their individual capacities.

24.    On or about April 7, 2022, PLAINTIFFS filed comprehensive and timely claims for damages with the CITY pursuant to applicable sections of the California Government Code.

25.    On or about April 26, 2022, the CITY rejected PLAINTIFFS' claim for damages pursuant to Government Code § 913 and § 915.4. PLAINTIFFS have therefore exhausted all administrative remedies.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

26.    PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 25 of this Complaint with the same force and effect as if fully set forth herein.

COMPLAINT FOR DAMAGES

27.     This incident occurred on Tuesday, December 18, 2021, around 7:00 p.m. at the family home where DECEDENT resided, located at 908 E. Adams Blvd., in Los Angeles, California.

28.     In response to the 911 call, from PLAINTIFF SONIA TORRES stating her brother was "going to commit suicide", DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5 arrived at 908 E. Adams Blvd., in Los Angeles, California at approximately 7:00 p.m. officers pointed a spotlight at DECEDENT from their patrol vehicle and yelled at him to drop the knife.  DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5 parked their patrol vehicles facing the 908 E. Adams location and were a safe distance away from DECEDENT at the time they made contact with him and started shouting at him.

29.     After about two minutes of officers shouting at DECEDENT and escalating the situation, DECEDENT stood up and then officers fired a less-than-lethal round at DECEDENT. DEFENDANTS JOSE ZAVALA and JULIO QUINTANILLA, as well as DOE OFFICERS continued shouting at DECEDENT with their weapons drawn at him while DECEDENT sat silently at the bottom step of the staircase on the porch. DECEDENT stood up again and started to turn around when he was simultaneously struck by less-lethal and then multiple rounds from Defendants ZAVALA and QUINTANILLA's firearms, as well as from DOE OFFICERS.

30.     In spite of the fact that DECEDENT's sister had called 911 because DECEDENT was having a mental health crisis, DEFENDANTS ZAVALA, QUINTANILLA, and DOES 1-5 did not investigate whether DECEDENT was in fact having suicidal ideations, or whether DECEDENT was having a mental crisis. Worse, DEFENDANTS ZAVALA, QUINTANILLA, and DOES 1-5 did not notify the Crisis Response Support Section ("CRSS"), Mental Evaluation Unit ("MEU") or Systemwide Mental Assessment Response Team ("SMART"). DEFENDANTS ZAVALA, QUINTANILLA, and DOES 1-5 did not properly assess the situation regarding

DECEDENT's mental state; did <u>not</u> notify supervisors of the situation; did <u>not</u> employ tactics to de-escalate the situation; did <u>not</u> give DECEDENT sufficient time to comprehend the presence of Los Angeles Police Officers at the family home; did <u>not</u> develop a tactical plan regarding DECEDENT's suicidal ideation; did <u>not</u> speak to DECEDENT in a sensitive and non-threatening manner; and did <u>not</u> give DECEDENT the opportunity to cooperate with the instructions of Los Angeles Police Department Officers.

31.    DECEDENT never threatened any of the DEFENDANTS ZAVALA, QUINTANILLA, and DOES 1-5; DECEDENT made no aggressive movements toward any of the DEFENDANTS ZAVALA, QUINTANILLA, and DOES 1-5; DECEDENT did <u>not</u> lunge toward any of the DEFENDANTS; DECEDENT did <u>not</u> move toward any of the DEFENDANTS; DECEDENT did <u>not</u> step forward toward any of the DEFENDANTS; DECEDENT did not attempt to harm any member of the community and was not at risk of harming anyone. DECEDENT did <u>not</u> make any furtive gestures that would suggest to the DEFENDANTS that DECEDENT was attempting, or intending to inflict harm on any of the DEFENDANTS, DOES 1-5 or any member of the community.

32.    Despite the foregoing facts, DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOE OFFICERS fired their guns at DECEDENT multiple times, and DECEDENT was struck with multiple bullets and was killed by DEFENDANTS. All DEFENDANTS participated in the use of deadly force against DECEDENT by either directly using force against DECEDENT, ordering another DEFENDANT to use force against DECEDENT, or by failing to intervene in the unjustified use of deadly force. DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA AND DOES 1-5 failed to order any other DEFENDANT not to use deadly force against the DECEDENT, and failed to intervene to stop the use of force against DECEDENT.

33.    MICHEL R. MOORE ("CHIEF MOORE") was and is a duly elected Chief of the LOS ANGELES POLICE DEPARTMENT and authorized to speak on behalf of Defendant CITY. CHIEF MOORE admitted that the mental health team should have been

sent to the scene where DECEDENT was shot and killed by Defendants.  Specifically he stated, "[Those resources] should have been dispatched because [DECEDENT] had an edged weapon and those protocols should have dispatched such a resource."

34.    As a result of DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5 negligence and excessive use of deadly force, DECEDENT died. The use of force against DECEDENT was excessive and objectively unreasonable under the circumstances, particularly because DEFENDANTS were aware that DECEDENT was suffering from a mental illness, was going through a potential mental health crisis, and because DECEDENT had not harmed anyone and did not pose a threat to any person. DEFENDANTS were aware that he had not committed a crime, and that he was in need of medical assistance, and did not pose an immediate threat of death or serious bodily injury to anyone at any time immediately prior to or during the use of force. Further, DEFENDANTS determined that DECEDENT did not pose an immediate threat of death or serious bodily injury to anyone at any time immediately prior to the use of deadly force.

35.    PLAINTIFF MARGARITO T. LOPEZ is DECEDENT's successor-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and succeeds to DECEDENT's interest in this action.

### FIRST CLAIM FOR RELIEF

**Fourth Amendment – Excessive Force (42 U.S.C. § 1983)**

**By PLAINTIFF MARGARITO T. LOPEZ Against Defendants JOSE ZAVALA,**

**JULIO QUINTANILLA and DOE DEFENDANTS 1-5**

36.    PLAINTIFF repeats and re-alleges each and every allegation contained in paragraphs 1 through 35 of this complaint with the same force and effect as if fully set forth herein.

37.    The Fourth Amendment to the United States Constitution, and applied to state actors by the Fourteenth Amendment, provides citizens the right to be secure in their person against unreasonable searches and seizures, including the use of excessive deadly force.

38.     The excessive and unreasonable use of deadly force against DECEDENT deprived him of his right to be secure against unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution and made applicable to state actors by the Fourteenth Amendment. Because of the unlawful excessive and unreasonable force purposefully utilized against DECEDENT, he suffered serious injuries resulting in death.

39.     DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA AND DOES 1-5 did not investigate whether DECEDENT was in fact having suicidal ideations, or whether DECEDENT was having a mental crises. DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA AND DOES 1-5 did not notify the Crisis Response Support Section ("CRSS"), Mental Evaluation Unit ("MEU") or the Systemwide Mental Assessment Response Team ("SMART"). DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA AND DOES 1-5 did not properly assess the situation regarding DECEDENT's mental state; did not notify supervisors of the situation; did not employ tactics to de-escalate the situation; did not give DECEDENT sufficient time to comprehend the presence of Los Angeles Police Officers at the family home; did not develop a tactical plan regarding DECEDENT's suicidal ideation; did not speak to DECEDENT in a sensitive and non-threatening manner; and did not give DECEDENT the opportunity to cooperate with the instructions of Los Angeles Police Officers.

40.     DECEDENT never threatened any of the DEFENDANTS; DECEDENT made no aggressive movements toward any of the DEFENDANTS nor did he threaten the safety and well-being of any member of the community; DECEDENT never lunged toward any of the DEFENDANTS nor did he move toward any of the DEFENDANTS. DECEDENT did not make any furtive gestures that would suggest to the DEFENDANTS that DECEDENT was attempting, or intending to inflict harm on any of the DEFENDANTS or any other person.

COMPLAINT FOR DAMAGES

41.   DEFENDANTS ZAVALA, QUINTANILLA AND DOE DEFENDANTS 1-5 did not employ tactics to de-escalate the scenario, failed to give DECEDENT time and space to understand the officers' presence, failed to give DECEDENT time and space to accept their presence, failed to approach and speak to DECEDENT in a non-threatening manner, and failed to give DECEDENT the opportunity to consent to and cooperate with Los Angeles Police Department Officers instructions.

42.   DECEDENT lived at the family home and was not an immediate threat to anyone at the time the DEFENDANTS shot and killed DECEDENT. As can be seen on the video released by the LAPD, at no time prior to DEFENDANTS ZAVALA, QUINTANILLA and DOES 1-5 discharging their weapons, no Police Officer was facing an imminent threat of serious physical injury; or that no Police Officer was incapable of neutralizing and/or effectuating the seizure of DECEDENT using any of a variety of readily available less-than-lethal means or strategies. The force used by DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA and DEFENDANTS DOES 1-5 was unnecessary, excessive, and unreasonable under the totality of the circumstances.

43.   The conduct of DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA AND DEFENDANTS DOES 1-5, was willful, wanton, malicious, and done with a deliberate indifference for the rights and safety of DECEDENT and therefore warrants the award of exemplary and punitive damages against DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA and DEFENDANTS DOES 1-5. All the DEFENDANTS, under 42 U.S.C. § 1983, are liable to the Plaintiff for compensatory, including general and special, damages.

44.   As a result of their excessive use of deadly force which caused constitutional injuries to Plaintiff, DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA AND DOE DEFENDANTS 1-5 are liable for DECEDENT's injuries, either because they were integral participants in the wrongful use of excessive deadly force, or because they failed to intervene to prevent these constitutional violations.

45.   Plaintiff bring this claim as successor-in-interest to the DECEDENT and seeks wrongful death damages for the violation of Plaintiff's and DECEDENT's rights. Plaintiff also seeks attorneys' fees pursuant to 42 U.S.C. § 1988(b).

**<u>SECOND CLAIM FOR RELIEF</u>**

**Fourth Amendment – Denial of Medical Care (42 U.S.C. § 1983)**

**Plaintiff MARGARITO T. LOPEZ Against the DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOE DEFENDANTS 1-5**

46.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 45 of this complaint with the same force and effect as if fully set forth herein.

47.   The Fourth Amendment to the United States Constitution, as applied to state actors by the Fourteenth Amendment, provides the right of all persons to reasonable medical care during the course of a seizure and/or when in the custody of Los Angeles Police Department Officers. DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5, failed to provide reasonable medical care to DECEDENT despite DECEDENT'S serious mental health condition; and DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5 manifested deliberate indifference to DECEDENT'S serious mental health condition of suicidal ideations and mental illness.

48.   DEFENDANTS ZAVALA, QUINTANILLA, and DOES 1-5 did <u>not</u> provide reasonable medical care for DECEDENT even after DEFENDANTS were informed by Plaintiff SONIA TORRES that DECEDENT was having suicidal ideations, and that DECEDENT was having a mental crisis.

49.   DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA AND DEFENDANTS 1-5 used excessive deadly force against DECEDENT thereby causing his death.

50.   DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA AND DOE DEFENDANTS 1-5 knew that DECEDENT was suffering from suicidal ideation, and

DEFENDANTS increased the danger by failing to provide mental health professionals for DECEDENT despite the fact that SONIA TORRES had informed dispatch, who then informed DEFENDANTS ZAVALA, QUINTANILLA and DOES 1-5 about DECEDENT's suicidal ideation and failed to respond to the requests for assistance for DECEDENT, who was having a severe mental crises, and was mentally ill. DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5 knew that failure to provide timely medical treatment for DECEDENT could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, and refused to permit medical care givers to access and care for DECEDENT at the scene prior to and after the incident.

51.    In so doing the aforementioned acts before, during and after the use of force, the conduct of DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA and DOE DEFENDANTS 1-5 were willful, wanton, malicious, and done with deliberate indifference for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to the individual DEFENDANTS.

52.    As a result of their misconduct, DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA and DOE DEFENDANTS 1-5 are liable for DECEDENT's injuries, either because they were integral participants in the use of force, or because they failed to intervene to prevent these violations. DEFENDANTS, under 42 U.S.C. § 1983, are liable to the Plaintiff for compensatory, including general and special, damages.

53.    PLAINTIFF brings this claim as successor-in-interest to the DECEDENT, and seeks wrongful death damages for the violation of DECEDENT's rights. PLAINTIFF also seeks attorney's fees pursuant to 42 U.S.C. § 1988(b).

COMPLAINT FOR DAMAGES

**THIRD CLAIM FOR RELIEF**

**Fourteenth Amendment--Substantive and Procedural Due Process----Interference with Familial Relationships (42 U.S.C. § 1983)**

**By Plaintiff MARGARITO T. LOPEZ against DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOE DEFENDANTS 1-10**

54.   PLAINTIFF incorporates by reference each and every allegation in paragraphs 1 through 53 as if fully set forth herein.

55.    PLAINTIFF had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in the familial relationship with his son.

56.   The actions of DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5, including the unjustified shooting of DECEDENT, along with other conduct of constitutional violations, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of the DECEDENT and PLAINTIFF, and with purpose to harm unrelated to any legitimate law enforcement objective.

57.   On December 18, 2021, DECEDENT was shot and killed by DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5, who shot DECEDENT multiple times causing his death.

58.   DEFENDANTS violated the PLAINTIFF'S rights under the Fourth Amendment when DECEDENT was shot and killed; and violated the PLAINTIFF'S rights under the Fourteenth Amendment to substantive and procedural due process because DEFENDANTS caused an unwarranted state interference in the PLAINTIFF'S familial relationship with DECEDENT.

COMPLAINT FOR DAMAGES

59.     Despite the foregoing facts, DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA  and DOES 1-5 shot at DECEDENT multiple times, and DECEDENT was struck and was killed by DEFENDANTS. All DEFENDANTS participated in the use of force against DECEDENT by either directly using deadly force against DECEDENT, or ordering another DEFENDANT to use deadly force against DECEDENT. DEFENDANTS failed to order any other DEFENDANT not to use deadly force against the DECEDENT, failed to intervene to stop the use of deadly force against DECEDENT.

60.     MARGARITO T. LOPEZ, had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive his of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in MARGARITO T. LOPEZ's familial relationship with his son, DECEDENT.

61.     The aforementioned acts and omissions of DEFENDANTS shock the conscience, in that the DEFENDANTS acted with deliberate indifference to the constitutional rights of DECEDENT and PLAINTIFF, and with purpose to harm unrelated to any legitimate law enforcement objective.

62.     DEFENDANTS also thus violated the substantive and procedural due process right of DECEDENT to be free from state actions that deprive life, liberty, or property in such a manner as to shock the conscience, including actions that constitute violations of Constitutional rights.

63.      As a direct and proximate cause of the acts of DEFENDANTS, PLAINTIFF has suffered emotional distress. PLAINTIFF has also been deprived of the life-long love, companionship, comfort, support, guidance society, care, and moral support of DECEDENT, and will continue to be so deprived for the remainder of his natural life.

64.     The conduct of DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5 was willful, wanton, malicious, and done with deliberate indifference for the rights and safety of DECEDENT and PLAINTIFF and therefore warrants the imposition of

exemplary and punitive damages as to DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5.

65.    PLAINTIFF MARGARITO T. LOPEZ seeks wrongful death damages under this claim in his individual capacity, and as successor-in-interest, for the violations of civil rights, including the interference with his familial relationship with DECEDENT. PLAINTIFF also seeks attorney's fees pursuant to 42 U.S.C. § 1988(b).

## FOURTH CLAIM FOR RELIEF

**Substantive and Procedural Due Process, Deliberate Indifference to Serious Medical Needs (42 U.S.C. § 1983)**

**By Plaintiff MARGARITO T. LOPEZ Against DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOE DEFENDANTS 1-10**

66.    PLAINTIFF incorporates by reference each and every allegation in paragraphs 1 through 65 as if fully set forth herein.

67.    PLAINTIFF had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience.

68.    The actions of DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5, including the unjustified shooting of DECEDENT, along with other conduct of constitutional violations, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of the DECEDENT and PLAINTIFF, and with purpose to harm unrelated to any legitimate law enforcement objective.

69.    On December 18, 2021, DECEDENT was shot and killed by DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5, who shot DECEDENT multiple times causing his death. At all times herein mentioned DECEDENT was denied reasonable medical care for his immediate mental and medical needs, by the acts and omissions of DEFENDANTS.

70.   DEFENDANTS violated the PLAINTIFF'S rights under the Fourth Amendment when DECEDENT was shot and killed; and violated the PLAINTIFF'S rights under the Fourteenth Amendment to substantive and procedural due process because DEFENDANTS put DECEDENT in a position of danger by their actions, including by failing to provide medical care to DECEDENT despite DECEDENT's objectively serious mental health crisis. DEFENDANTS manifested deliberate indifference to DECEDENT'S mental health condition; and to the constitutional rights of PLAINTIFF; and by acts and omissions of DEFENDANTS who failed to provide proper care for a mentally ill man going through a crisis.

71.   DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 knew that DECEDENT was suffering from a mental health crisis, and DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 increased the danger by failing to provide mental health professionals for DECEDENT despite the fact that SONIA TORRES had informed *all* DEFENDANTS about DECEDENT's suicidal ideation; and failed to respond to Plaintiffs' requests for medical assistance for DECEDENT, who was having a severe medical crises, and was mentally ill. DEFENDANTS knew that failure to provide timely medical treatment for DECEDENT could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, and also refused to permit medical care givers to access and care for DECEDENT at the scene prior to and after the incident.

72.   Despite the foregoing facts, DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA  and DOES 1-5 shot at DECEDENT multiple times, and DECEDENT was struck and was killed by DEFENDANTS. All DEFENDANTS participated in the use of force against DECEDENT by either directly using deadly force against DECEDENT, or ordering another DEFENDANT to use deadly force against DECEDENT. DEFENDANTS failed to order any other DEFENDANT not to use deadly force against the DECEDENT,

failed to intervene to stop the use of deadly force against DECEDENT, and failed to provide medical treatment.

73.     DECEDENT had a cognizable interest under the Substantive Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience, including actions that constitute deliberate indifference to serious medical needs, health, and safety, and from state actions that constitute violations of PLAINTIFF'S and DECEDENT'S constitutional right to prompt and adequate medical care. DEFENDANTS violated DECEDENT's constitutional right to prompt and adequate medical care by denying DECEDENT access to medical care and mental health professionals. DEFENDANTS put DECEDENT in a position of danger by their actions, including by impeding access to medical care. DEFENDANTS knew that DECEDENT was suffering from suicidal ideation and increased the danger by failing to respond properly and by escalating the situation in the language and manner in which they spoke to DECEDENT.

74.     MARGARITO T. LOPEZ, had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive his of life, liberty, or property in such a manner as to shock the conscience.

75.     DEFENDANTS also thus violated the substantive and procedural due process right of DECEDENT to be free from state actions that deprive life, liberty, or property in such a manner as to shock the conscience, including actions that constitute deliberate indifference to serious medical needs, health, and safety, and actions that constitute violations of Constitutional rights to prompt and adequate medical care.

76.     As a direct and proximate cause of the acts of DEFENDANTS, PLAINTIFF has suffered emotional distress. PLAINTIFF has also been deprived of the life-long love, companionship, comfort, support, guidance society, care, and moral support of DECEDENT, and will continue to be so deprived for the remainder of his natural life.

COMPLAINT FOR DAMAGES

77.    The conduct of DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5 was willful, wanton, malicious, and done with deliberate indifference for the rights and safety of DECEDENT and PLAINTIFF and therefore warrants the imposition of exemplary and punitive damages as to DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5.

78.    PLAINTIFF MARGARITO T. LOPEZ seeks wrongful death damages under this claim in his individual capacity, and as successor-in-interest, for the violations of civil rights. PLAINTIFF also seeks attorney's fees pursuant to 42 U.S.C. § 1988(b).

## FIFTH CLAIM FOR RELIEF
### Municipal Liability – Ratification (42 U.S.C. § 1983)
### Against Defendant CITY and DOES 6-10

79.    PLAINTIFF incorporates by reference each and every allegation in paragraphs 1 through 78 as if fully set forth herein.

80.    DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5 acted under color of law.

81.    The acts and omissions DEFENDANTS deprived DECEDENT and PLAINTIFF of their constitutional rights under the United States Constitution.

82.    Upon information and belief, DEFENDANT DOES 6-10 are final policymakers and/or supervisory officers, acting under color of law, and who had final policymaking authority concerning the acts of JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-10, and have *ratified*, and have specifically *approved*, the acts and omissions of JOSE ZAVALA, JULIO QUINTANILLA and DOE 1-5, and the basis for the acts and omissions. Defendant CITY of LOS ANGELES, and DEFENDANT DOES 6-10, final policymakers, have *ratified*, and have specifically *approved*, the acts and omissions of DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5.

83.     Defendant CITY and DOES 6-10, final policymakers and supervisory officers, have determined that the acts and omissions of DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA AND DOES 1-5 were "within policy" of the LOS ANGELES POLICE DEPARTMENT Policy Manual.

84.     Because DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5, were <u>not</u> disciplined, reprimanded, retrained, suspended, have <u>not</u> suffered any administrative consequences, have <u>not</u> suffered any adverse employment consequences, or otherwise penalized in any way in connection with DECEDENT's death, the Defendant CITY of LOS ANGELES, and DOES 6-10, final policymakers, have ***ratified***, and have specifically ***approved***, of the acts and omissions of DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5.

85.     Defendant CITY of LOS ANGELES, and DEFENDANT DOES 6-10 manifested deliberate indifference with regard to the excessive use of deadly force, and the denial of medical care for DECEDENT, and deliberate indifference to DECEDENT's serious medical needs. PLAINTIFF has suffered the loss of the love, companionship, affection, comfort, care, society, training, guidance, and moral support of DECEDENT.

86.     Defendants CITY of LOS ANGELES and DOES 6-10, are each liable to PLAINTIFF for compensatory damages under 42 U.S.C. § 1983.

87.     PLAINTIFF seeks wrongful death damages for the violation of PLAINTIFF and DECEDENT's rights under this claim. PLAINTIFF also seeks attorney's fees under this claim pursuant to 42 U.S.C. § 1988(b).

### <u>SIXTH CLAIM FOR RELIEF</u>

**Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

**Plaintiff MARGARITO T. LOPEZ Against the CITY**

88.     PLAINTIFF incorporates by reference each and every allegation in paragraphs 1 through 87 as if fully set forth herein.

89.   At all times herein mentioned, Defendants JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5 acted under color of law and the acts and omissions of Defendants JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5 deprived DECEDENT and PLAINTIFF of their Constitutional rights under the United States Constitution. The training policies of Defendant CITY and Defendant DOES 6-10 were not adequate to properly train Police Department Officers to handle the usual and recurring situations in their interactions with residents, including responding to calls involving mentally ill people, responding to calls and interacting with people who display symptoms of mental illness. The training policies of Defendant CITY were not adequate to properly train Police Department Officers with regard to the use of deadly force, the permissible use of deadly weapons, and protecting the rights of persons to medical care during in the course of detaining individuals.

90.   The unjustified and excessive use of deadly force against DECEDENT by JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5 was a result of the negligent training by Defendant CITY who failed to train Police Department Officers, such as DOES-10 as to ***proper police tactics***, proper use of force, proper use of deadly force, and proper police tactics in the use of force with respect to mentally ill individuals. Defendant CITY were responsible for the training of Police Department Officers to ensure that the actions, procedures, and practices of JOSE ZAVALA, JULIO QUINTANILLA AND DOES 1-5 complied with Peace Officer Standards and Training (POST) training standards regarding proper police tactics, proper use of force, and proper use of deadly force.

91.   Defendant CITY negligently failed to train CITY Los Angeles Police Officers, such as JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5, to comply with POST training standards regarding proper police tactics, proper use of force, proper use of deadly force, and proper police tactics when dealing with mentally ill individuals. POST was established by the California Legislature in 1959 to set minimum training standards for California Los Angeles Police Officers. The training policies of Defendant CITY were not

adequate to train its Los Angeles Police Officers to handle the usual and recurring situations with residents and pretrial detainees that JOSE ZAVALA, JULIO QUINTANILLA and DOES 1 through 5 have contact with.

92. The training policies of Defendant CITY were deficient in the following:

(a) Defendant CITY failed to properly train Los Angeles CITY Los Angeles Police Officers, such as JOSE ZAVALA, JULIO QUINTANILLA and DOES 1 through 5, to *de-escalate* interactions with residents or mentally ill individuals, so that Los Angeles Police Officers do not *escalate* their interactions with residents, or with mentally ill individuals, and do not overreact and resort to use of deadly force when the use of force was not necessary. Instead, JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5 escalated their interactions with DECEDENT who was mentally ill and had suicidal ideation.

(b) Defendant CITY failed to properly train Los Angeles CITY Los Angeles Police Officers, such as JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5, to not permit fear to reach the point of becoming *unreasonable fear*, and not objectively reasonable, which would result in the use of deadly force by DOES 1-5 and would cause the death of residents, or mentally ill persons such as DECEDENT.

(c) Defendant CITY failed to properly train Los Angeles CITY Los Angeles Police Officers, such as JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5, to properly and *adequately assess* the need to use force against persons such as DECEDENT, who have a mental illness.

(d) Defendant CITY failed to properly train CITY Los Angeles Police Officers, such as JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5, in proper police tactics, such as *situational awareness*, so that Los Angeles Police Officers, such as DOES 1-5, do not utilize negligent tactics, which is what JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5 did in this case. Because of this lack of proper training by Defendant JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5 did not use proper police tactics in the handling of their contact and interaction with DECEDENT. JOSE ZAVALA, JULIO

QUINTANILLA and DOES 1-10 used *defective* police tactics, including the lack of a *situational awareness* by JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5. These training failures by Defendant CITY, and *defective* tactics by JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5, resulted in the death of DECEDENT.

(e) Defendant CITY failed to properly train CITY of LOS ANGELES Los Angeles Police Officers, such as JOSE ZAVALA, JULIO QUINTANILLA and DOES 1 through 5, the importance of *effective communication* between officers prior to using any type of force.

(f) Because of the lack of proper training by CITY of Officers JOSE ZAVALA, JULIO QUINTANILLA and DOES 1 through 5, did not use effective communication prior to and during the use of force against DECEDENT. This *ineffective* communication of information by JOSE ZAVALA, JULIO QUINTANILLA and DOES 1 through 5, prior to and during the incident, resulted in the death of DECEDENT, causing constitutional injuries to DECEDENT and PLAINTIFF.

93.    The failure of Defendant CITY to provide proper training to its Police Officers caused the deprivation of PLAINTIFF'S rights by Defendants JOSE ZAVALA, JULIO QUINTANILLA and DOES 1-5. Defendant CITY's failure to train is so closely related to the deprivation of the PLAINTIFF'S rights as to be the moving force that caused the ultimate injuries to PLAINTIFF.

94.    The training policies of the CITY were not adequate to train its deputy Sheriff's to handle the usual and recurring situations with which they must deal with, including mentally ill persons, such as DECEDENT herein. Defendant CITY was deliberately indifferent to the obvious consequences of its failure to properly train its

Police officers.

95.    The failure of the CITY to provide adequate training to its officers caused the deprivation of PLAINTIFF'S rights by JOSE ZAVALA, JULIO QUINTANILLA and DOE DEFENDANTS 1-5; the CITY'S failure to train is so closely related to the deprivation of

DECEDENT and PLAINTIFF'S rights as to be the moving force that caused the ultimate constitutional injuries to PLAINTIFF.

96.     The Defendant CITY failed to train JOSE ZAVALA, JULIO QUINTANILLA and DOE DEFENDANTS 1-5 properly and adequately. Moreover, the CITY failed to properly train its CRSS's, MEU's, SMART and Police Department Officers with respect to the use of excessive force, communication, and improper seizure, and also with respect to handling situations with the mentally ill

97.     By reason of the aforementioned acts and omissions of all the Defendants, and Defendant CITY, PLAINTIFF has suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and moral support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

98.     Accordingly, Defendants CITY JOSE ZAVALA, JULIO QUINTANILLA and DOES 1 through 5, each are liable to the PLAINTIFFS for compensatory damages under 42 U.S.C. § 1983. PLAINTIFF bring these claims as DECEDENT's successors-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and seek survival damages for the violation of DECEDENT's rights. PLAINTIFFS also seek reasonable attorneys' fees pursuant to 28 U.S.C. § 1988, costs, and interest.

## SEVENTH CLAIM FOR RELIEF

### Municipal Liability – Unconstitutional Policy, Practice, or Custom

### (42 U.S.C. § 1983)

### By MARGARTIO LOPEZ Against the CITY of LOS ANGELES and DOES 6-10

99.      PLAINTIFF incorporates by reference each and every allegation contained in paragraphs 1 through 98 as if fully set forth herein.

100.   The acts of JOSE ZAVALA, JULIO QUINTANILLA and DOE DEFENDANTS 1-5 that deprived DECEDENT and PLAINTIFF of their constitutional rights under the Fourth and Fourteenth Amendments as set forth above and were done

pursuant to a widespread and longstanding practice or custom of Defendant CITY which condones, ratifies, and acquiesces in the excessive use of deadly force by Los Angeles Police Officers. DOE DEFENDANTS 1-5 caused the deprivation of the Plaintiff's constitutional rights, and Decedent's constitutional rights, pursuant to this longstanding practice or custom of Defendant CITY. The CITY's widespread and longstanding practice or custom is so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the Decedent's death.

101. Pursuant to the CITY's widespread and longstanding practice or custom, which condones, ratifies, and acquiesces in the excessive use of deadly force by Los Angeles Police Officers, JOSE ZAVALA, JULIO QUINTANILLA and DOE DEFENDANTS 1-5, were not disciplined, reprimanded, retrained, or suspended, have not suffered any administrative consequences, and have not suffered any adverse employment consequences, or were otherwise penalized in any way in connection with DECEDENT's death.

102. Defendants CITY and DOES 6 through 10, together with other CITY final policymakers and supervisors, maintained, *inter alia*, the following unconstitutional customs, practices, and policies:

(a) The use of excessive force, including excessive deadly force, by CITY Los Angeles Police Officers, when there is no need for deadly force, or where there is no imminent threat to Los Angeles Police Officers.

(b) The CITY's failure to provide adequate training regarding the use of force, and the use of deadly force.

(c) The CITY's employing and retaining as Los Angeles Police Officers and individuals such as Officers JOSE ZAVALA, JULIO QUINTANILLA and DOE DEFENDANTS 1-5, whom the CITY at all times herein knew or reasonably should have known, had dangerous propensities for abusing their authority and for using excessive deadly force.

(d) The CITY's inadequately supervising, training, controlling, assigning, and disciplining CITY OF LOS ANGELES officers, including JOSE ZAVALA, JULIO QUINTANILLA and DOE DEFENDANTS 1-5, whom the CITY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits.

(e) The CITY's maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by CITY Officers.

(f) The CITY's failures to adequately discipline CITY Los Angeles Police Officers, including JOSE ZAVALA, JULIO QUINTANILLA and DOE DEFENDANTS 1-5, for the above-referenced categories of misconduct, including "slap on the wrist" discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct.

(g) The CITY's custom and practice of concluding that acts of excessive use of force are "within policy" including use of deadly force instances that were later determined in court to be unconstitutional, and/or excessive use of force.

(h) Even where a CITY officer use of force is determined in court to be unconstitutional, and/or excessive use of force, the CITY has refused to discipline, terminate, or retrain the Officers involved.

(i) The CITY's custom and practice of accommodating, or facilitating a "code of silence," pursuant to which Los Angeles Police Officers do not report other Officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another deputy, while following the code, the deputy being questioned will claim ignorance of the other deputy's wrongdoing.

(j) The CITY's maintaining a policy of inaction and an attitude of indifference towards soaring numbers of instances of use excessive force by Los Angeles Police

Officers, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who use excessive force against unarmed people.

(k) The CITY's custom and practice of providing inadequate training regarding handling situations with the mentally ill persons and failing to provide adequate training in compliance with Welfare and Institutions Code § 5150 and 5158.

103.   Defendants CITY and DOES 6-10, together with various other CITY officials, and final policy makers, had either actual or constructive knowledge of the unconstitutional policies, practices and customs alleged in the paragraphs above. The Defendants CITY and DOES 6-10 acted with deliberate indifference to the foreseeable effects and consequences of these customs and policies with respect to the constitutional rights of DECEDENT, Plaintiff, and other individuals similarly situated.

104.   The following are only a few examples of constitutional violations committed by Los Angeles Police Department Officers working for Defendant CITY. These examples demonstrate the unconstitutional customs and practices of using excessive force against unarmed civilians, ratifying that use of deadly force, and/or finding the use of deadly force to be justified or "within policy."

a) (a) In *Contreras v. City of Los Angeles*, case number 2:11-cv-01480-SVW (SHx)), the CITY argued that the use deadly force against Mr. Contreras by LAPD officers was reasonable; a unanimous jury disagreed, awarding Mr. Contreras $5,700,000 after finding that the involved officers used excessive and unreasonable force when they shot an unarmed Mr. Contreras.  Police reports confirmed that Mr. Contreras was unarmed.  In that case, the involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

b) In *P.C., et al. v. City of Los Angeles*, case number CV 07-3413 PLA, the CITY argued that the involved LAPD officers' use of force was reasonable; a unanimous jury disagreed, awarding the plaintiffs a total of $3,215,000 after finding that the involved officers' use of force was excessive and unreasonable. In that case, the involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

c) In *Cano, et al. v. City of Los Angeles*, case number 2:15-cv-00333-JAK-E, currently pending in the United States District Court for the Central District of California, the family of an unarmed man (David Martinez) who was shot and killed by LAPD Rampart officers alleges that the force used by the officers was excessive and unreasonable. Police reports confirm that Mr. Martinez was unarmed at the time of the shooting. In that case, the involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

105. The aforementioned cases establish a ***pattern*** of excessive use of force by Los Angeles Police Department Officers, and the unconstitutional custom, and practice of the CITY in ***ratifying*** the excessive use of force by Los Angeles Police Department Officers, as evidenced by the number of prior cases involving the use of deadly force by Los Angeles Police Department Officers working for the Police Department.

106. The CITY's longstanding practice or custom caused the deprivation of DECEDENT and PLAINTIFF's rights by DEFENDANTS; that is, the CITY's official policy condoning excessive force against mentally ill people is so closely related to the deprivation of the DECEDENT's and PLAINTIFF'S rights in this case as to be the moving force that caused DECEDENT's death.

107.   The CITY, and DOE DEFENDANTS 6-10, together with various other CITY officials with final policy making authority, had either actual or constructive knowledge of the unconstitutional policies, practices and customs alleged in the paragraphs above.

108.   The CITY, and DOE DEFENDANTS 6-10, also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of DECEDENT, PLAINTIFF, and other individuals similarly situated.

109.   By perpetrating, sanctioning, and ratifying the unconstitutional violations and other wrongful acts, The CITY, and DOE DEFENDANTS 6-10 acted with deliberate indifference for the life of DECEDENT, and for DECEDENT's and PLAINTIFF'S constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, by all of the DEFENDANTS were affirmatively linked to and were the driving force for the constitutional injuries of DECEDENT and the PLAINTIFF.

110.   By reason of the aforementioned acts and omissions, the Plaintiff has suffered the loss of the love, companionship, affection, comfort, care, society, training, guidance, and moral support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

111.   Accordingly, each DEFENDANT is liable to PLAINTIFF for compensatory damages under 42 U.S.C. § 1983.

112.   PLAINTIFF bring his claim individually and as successors in interest to DECEDENT, and seek wrongful death damages under this claim. PLAINTIFF also seek attorney's fees under this claim pursuant to 42 U.S.C. § 1988(b).

## EIGHTH CLAIM FOR RELIEF

### Negligence – Wrongful Death

### By MARGARITO LOPEZ Against ALL DEFENDANTS

113.   PLAINTIFF repeats and re-alleges each and every allegation in paragraphs 1 through 112 of this complaint with the same force and effect as if fully set forth herein.

114.   Los Angeles Police Department Officers, including DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5, have a duty to use reasonable care to prevent harm or injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving warnings, not using unnecessary force, using less than lethal options, and only using deadly force as a last resort.

115.   DEFENDANTS breached this duty of care. The actions and inactions of Defendant DOES 1 through 5 were negligent and reckless.

116. DEFENDANTS CITY and DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-10 knew that by acting as sworn officers under color of law, they were charged with ensuring the safety and well-being of Decedent. Defendants CITY and DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-10 had the duty to protect and ensure the safety of residents, such as Decedent, including but not limited to:

(a) the failure to properly and adequately assess the need to detain, arrest, restrain, and use force or deadly force against DECEDENT;

(b) the negligent tactics and handling of the situation with DECEDENT, including negligence occurring immediately prior to the use of force, and negligent tactics in handling a situation with a mentally ill person;

(c) the negligent detention, arrest, and use of force, including deadly force, against DECEDENT;

(d) the failure to provide prompt medical care to DECEDENT;

(e) the failure to properly train and supervise employees, both professional and non-professional, including DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-10;

(f) the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the

rights of DECEDENT, including DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-10;

(g)   the negligent handling of evidence and witnesses; and

(h)   the negligent communication of information during the incident.

117.   As a direct and proximate result of DEFENDANTS' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT was caused to suffer severe pain and suffering and ultimately died.

118.   Also as a direct and proximate result of DEFENDANTS' conduct as alleged above, PLAINTIFF suffered emotional distress and mental anguish. PLAINTIFFS also has been deprived of the life-long love, companionship, comfort, support, society, care and moral support of DECEDENT, and will continue to be so deprived for the remainder of his natural life.

119.   The CITY of LOS ANGELES is vicariously liable for the wrongful acts of all the DEFENDANTS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

120.   PLAINTIFF bring this claim both individually and as successor in interest of DECEDENT, and seek wrongful death damages.

## NINTH CLAIM FOR RELIEF

### Battery – Wrongful Death

### By MARGARITO LOPEZ Against ALL DEFENDANTS

121.   PLAINTIFF repeats and re-alleges each and every allegation in paragraphs 1 through 120 of this complaint with the same force and effect as if fully set forth herein.

122.   DEFENDANTS JOSE ZAVALA,  JULIO QUINTANILLA, and DOES 1-5, while working for the LOS ANGELES POLICE DEPARTMENT, and acting within the course and scope of their employment and duties as Los Angeles Police Department Officers, intentionally shot DECEDENT, thereby using unreasonable and excessive force

against him. As a result of the actions of DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 DECEDENT suffered severe pain and suffering and ultimately died from his injuries. DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 had no legal justification for using force against DECEDENT, and their use of force while carrying out their duties as Los Angeles Police Department Officers was an unreasonable and non-privileged use of force.

123. Each of DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 integrally participated or failed to intervene in the use of force.

124. As a result of the Officers' excessive use of force, DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-10 are liable for DECEDENT's injuries, either because they were integral participants in the wrongful excessive use of force, or because they failed to intervene to prevent these violations.

125. The CITY of LOS ANGELES is vicariously liable for the wrongful acts of all the DEFENDANTS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

126. As a direct and proximate result of the acts and omissions of DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 as alleged above, DECEDENT died and PLAINTIFF has suffered the loss of the love, companionship, affection, comfort, care, society, training, guidance, and moral support of DECEDENT.

127. The conduct of DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of PLAINTIFF and DECEDENT, entitling PLAINTIFF, individually and as successor-in-interest to DECEDENT, to an award of damages as to all DEFENDANTS.

128. PLAINTIFF brings his claim individually and as a successor in interest to DECEDENT, and each also seeks wrongful death damages under this claim.

## **TENTH CLAIM FOR RELIEF**

### **Negligent Infliction of Emotional Distress**

### **By ALL PLAINTIFFFS Against DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, AND DOES 1-10**

129.   PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 128 of this complaint with the same force and effect as if fully set forth herein.

130.   DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 negligently caused physical injury and death to DECEDENT when DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 discharged their firearms at DECEDENT, striking him with multiple bullets and killing DECEDENT. The use of deadly force by DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 was excessive and unreasonable, and DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 were negligent in discharging their firearms at DECEDENT, including pre-shooting negligent conduct, actions, omissions, including negligent police tactics.

131.   MARGARTIO LOPEZ was present at the scene, which is her residence, and contemporaneously heard, when DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 fatally discharged their firearms at DECEDENT and MR. MARGARITO LOPEZ was aware that DECEDENT, his son, was being killed.

132.   SONIA TORRES was present at the scene, which is her residence, and contemporaneously witnessed, when DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 fatally discharged their firearms at DECEDENT and MS. TORRES was aware that DECEDENT, her brother, was being killed.

133.   KENI LOPEZ was present at the scene, which is his residence, and contemporaneously heard when DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 fatally discharged their firearms at DECEDENT and Mr. LOPEZ was aware that DECEDENT, his brother, was being killed.

134.   ROSY LOPEZ was present at the scene, which is her residence, and contemporaneously heard, when DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 fatally discharged their firearms at DECEDENT and MS. LOPEZ was aware that DECEDENT, her brother, was being killed.

135.   As a result of being present at the scene and perceiving their brother and son, DECEDENT, being fatally shot by DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1 to 5, MARGARITO LOPEZ, SONIA TORRES, KENI LOPEZ, AND ROSY LOPEZ suffered serious emotional distress, including but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame.

136.   On information and belief, any ordinary reasonable person would be unable to cope with seeing their brother fatally shot multiple times by police officers, especially at their own residence.

137.   The CITY is vicariously liable for the wrongful acts of all the DEFENDANT OFFICERS, inclusive, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

138.   PLAINTIFFS bring this claim individually and seek damages under this claim as individuals.

### ELEVENTH CLAIM FOR RELIEF

### Violation of Cal. Civil Code § 52.1 (the Bane Act)

### By MARGARITO LOPEZ Against All DEFENDANTS

139.    PLAINTIFF repeats and re-alleges each and every allegation in paragraphs 1 through 138 of this complaint with the same force and effect as if fully set forth herein.

140.   California Civil Code, Section 52.1 (the Bane Act), prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights.

141.   California Civil Code, Section 52.1 (the Bane Act), applies to this complaint with the same force and effect as fully set forth herein:

(a) If a person or person, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals or rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state...a civil action for injunctive and other appropriate equitable relief may be brought.

142.   Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of this state, has been interfered with, as described in subdivision (a), may institute and prosecute in his name and on his own behalf a civil action for damages, including but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (a).

143.   The California Civil Code, Section 52.1(b) authorizes a private right of action for damages to any person whose constitutional rights are violated. Also, "a successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1." *Chaudhry v. City of Long Beach.*, 751 F.3d 1096, 1105-06 (9th Cir. 2014); citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) ("[T]he elements of the excessive force claim under § 52.1 are the same as under § 1983."); *Bender v. CITY of L.A.*, 217 Cal.App. 4th 968, 976 (2013) ("an unlawful [seizure]…when accompanied by unnecessary, deliberate and excessive force…is within the protection of the Bane Act").

144.   DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 violated DECEDENT's constitutional rights by using excessive force, whose acts of unreasonable

force were done intentionally, and with a reckless disregard for his constitutional rights and for his life. *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1044-1045 (9th Cir. 2018)

145.   Also as alleged above, DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 unjustly shot DECEDENT at a time when DECEDENT posed no threat of death or serious bodily injury to any person. On information and belief, DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5, while working for the CITY and acting within the course and scope of their duties, intentionally committed and attempted to commit acts of violence against DECEDENT, including by shooting him without justification or excuse, by integrally participating and failing to intervene in the above violence, and by denying necessary medical care.

146.   DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 violated PLAINTIFFS' rights under the Fourteenth Amendment to substantive and procedural due process when they put DECEDENT in a position of danger by their actions, including by impeding access to medical care. DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 knew that DECEDENT was suffering a paranoid ideation, and was mentally ill. DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 increased the danger by failing to respond to the requests of PLAINTIFFS for medical assistance for DECEDENT, who was suffering from a mental illness when DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 killed DECEDENT.

147.   When DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 unnecessarily shot the DECEDENT with multiple bullets, this caused the DECEDENT to suffer the ill effects of being shot. This act perpetrated against an unarmed and a mentally ill individual by the DEFENDANTS JOSE ZAVALA,  JULIO QUINTANILLA, and DOES 1-5 interfered with DECEDENTS' civil rights to be free from unreasonable searches and seizures, to due process, to equal protection of the laws,

to medical care, to be free from state actions that shock the conscience, and to life, liberty, and property.

148.    On information and belief, DEFENDANTS intentionally and spitefully committed the above acts to discourage DECEDENT from exercising his civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights, which he was fully entitled to enjoy.

149.    On information and belief, DECEDENT reasonably believed and understood that the violent acts committed by DEFENDANTS were intended to discourage him from exercising the above civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights because of DECEDENT's Latino ancestry.

150.    The conduct of DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5 was a substantial factor in causing the harm, losses, injuries, and damages of DECEDENT and PLAINTIFFS.

151.    The CITY of LOS ANGELES is vicariously liable for the wrongful acts of all the DEFENDANTS, including DEFENDANTS JOSE ZAVALA, JULIO QUINTANILLA, and DOES 1-5, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's acts would subject him or her to liability.

152.    DEFENDANTS successfully interfered with the above civil rights of DECEDENT and PLAINTIFF.

153.    The conduct of DEFENDANTS was a substantial factor in causing PLAINTIFF'S harms, losses, injuries, and damages.

154.    The CITY is vicariously liable, under California law and the doctrine of respondeat superior, for the acts and omissions of DEFENDANTS and DOES 1-10.

155.    The conduct of DEFENDANTS was a substantial factor in causing the harm, losses, injuries, and damages of PLAINTIFF. PLAINTIFF seekS wrongful death damages

COMPLAINT FOR DAMAGES

under this claim in his individual capacity and as a successor-in-interest to DECEDENT. PLAINTIFF also seek costs and attorney fees under this claim pursuant to Civ. Code, § 52.1(h).

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFFS request entry of judgment in their favor and against All DEFENDANTS, inclusive, as follows:

A.    For compensatory damages, for the wrongful shooting of DECEDENT, damages for Plaintiffs under federal and state law, in the amount to be proven at trial;

B.    For interest;

C.    For other general damages in an amount according the proof at trial;

D.    For other non-economic damages in an amount according the proof at trial;

E.    For other special damages in an amount according to proof at trial;

F.    For reasonable costs of this suit;

G.    Attorney's fees pursuant to 42 U.S.C. § 1988;

H.    Attorney's fees and costs pursuant to California Civil Code, Section 52.1(h). (The Bane Act).

I.    For such further other relief as the Court may deem just, proper, and appropriate.

Dated: October 17, 2022                    CARRILLO LAW FIRM, LLP
                                           LAW OFFICES OF DALE K. GALIPO


                                           Luis A. Carrillo
                                           Michael S. Carrillo
                                           Attorneys for PLAINTIFFS

COMPLAINT FOR DAMAGES

## **DEMAND FOR JURY TRIAL**

The PLAINTIFFS named herein hereby demand a trial by jury.

Dated: October 17, 2022                    CARRILLO LAW FIRM, LLP
                                           LAW OFFICES OF DALE K. GALIPO


                                           Luis A. Carrillo
                                           Michael S. Carrillo
                                           Attorneys for PLAINTIFFS

COMPLAINT FOR DAMAGES