MICHAEL P. STONE, SBN 91142
MUNA BUSAILAH, SBN 166328
Email: m.busailah@police-defense.com
Members of **STONE BUSAILAH, LLP**
*A Partnership of Professional Law Corporations*
Email: d.danial@police-defense.com
1055 East Colorado Boulevard, Suite 320
Pasadena, California 91106
Telephone: (626) 683-5600
Facsimile: (626) 683-5656

*Attorneys for Defendants* **JOSE ZAVALA and JULIO QUINTANILLA**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARITO T. LOPEZ, SONIA TORRES, KENI LOPEZ, ROSY LOPEZ,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, JOSE ZAVALA, JULIO QUINTANILLA, AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>Defendants. | **CASE NO. 2:22-cv-07534-FLA-MAAx**<br><br>[Assigned to Judge Fernando L. Aenlle-Rocha, USDC-Hon. Mag. Maria A. Audero, USDC-Roybal Bldg]<br><br>**DEFENDANTS' NOTICE OF MOTION AND *FOURTH* MOTION IN LIMINE TO LIMIT PLAINTIFFS' EXPERT WITNESS BENETT OMALU'S TESTIMONY AND TO EXCLUDE IMPROPER OPINIONS AND TESTIMONY AS TO MATTERS BEYOND HIS AREA OF EXPERTISE**<br><br>[Filed concurrently with Declaration of Muna Busailah to Motions *in Limine* No. 1, No. 2, No. 3, No. 4 and No. 5; Exhibits A-C; [Proposed] Order]<br><br>FPTC: May 31, 2024<br>TIME: 1:00 PM<br>DEPT: 6B, 6th Floor |

PLEASE TAKE NOTICE THAT Defendants JOSE ZAVALA, AND JULIO QUINTANILLA (collectively "Defendants"), will and hereby do move this Court, before trial and prior to jury selection, for the following order in *limine* prohibiting

1

Plaintiffs' expert witnesses, Dr. Bennet Omalu, from testifying or offering any opinions as to the following:

1. Any evidence, mention or argument concerning impermissible personal or lay opinions of Dr. Omalu and any opinions that are irrelevant to the issues to be tried, that invade the province of the jury, that draw legal conclusions, that are speculative, that lack foundation, that are conclusory, that are nothing more than credibility determinations, that concern a party or witness' subjective knowledge and that are more prejudicial than probative;

2. Any evidence, mention, opinion, or argument that the decedent suffered "chemical pain" while unconscious, including while in a "deep coma";

3. Any evidence, mention or argument of opinions beyond the scope of his designated rebuttal area;

4. Any evidence, mention or argument of any opinions beyond his areas of expertise;

5. Any evidence, mention or argument concerning Dr. Omalu's background and expertise that do not relate in any way to the issues in this case and his role as a expert witness, if allowed; and

6. Any evidence, mention or argument of any books written by or about him and any television or film productions about him.

This Motion is made pursuant to Federal Rules of Civil Procedure, Rule 26(a)(2) and 37 concerning expert witnesses; Federal Rules of Evidence, Rules 401,

402, 403, 701, 702 and 703; and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

Counsel met and conferred on Defendants' motions *in limine* on April 18, 2024. The parties were unable to resolve the substance of this motion.

This Motion also is based upon the supporting Memorandum of Points and Authorities, the Declaration of Muna Busailah and exhibits, the papers and pleadings on file in this action, and upon such further matters which may be presented at or before the hearing on this Motion.

Date: May 3, 2024             **STONE BUSAILAH, LLP**

                      By: /s/ Muna Busailah
                          _____
                          MUNA BUSAILAH, Esq.
                          Attorney for Defendants JOSE ZAVALA,
                          JULIO QUINTANILLA

# DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION.

This matter arises from a fatal officer-involved shooting that occurred on December 23, 2017, and that involved police Officers of the Los Angeles Police Department. Plaintiffs are the father and siblings of the decedent, Margarito Lopez (Jr.). Plaintiff alleges that the Officers used excessive deadly force and wrongfully cause the death of Mr. Lopez, who was armed with a knife at the time of the shooting, in violation of federal and state laws. Plaintiffs seek compensatory and punitive damages.

Plaintiffs designated as an expert witness Dr. Bennet Omalu, a well-known pathologist who has been the subject of books and a Hollywood movie.[1] Defendants anticipate that Dr. Omal will offer testimony on the body positioning of the decedent at the time of the shooting, the internal bodily trajectory of the bullet wounds sustained by the decedent, and the pain and suffering of the decedent prior to death. However, Dr. Omalu is not qualified to offer such opinions, as he is not a trajectory or ballistics expert, nor shooting scene reconstruction expert or a firearms expert. Further, Dr. Omalu offers opinions that invade the province of the jury and exceed the scope of his alleged area of expertise.

---

[1]     Dr. Omalu and his opinions on the subject of chronic traumatic encephalopathy ("CTE") and the National Football League were the subject of the movie *Concussion* starring Will Smith, topics that have nothing to do with the issues in this case.

## II. DR. OMALU'S TESTIMONY IS CUMULATIVE AND SHOULD BE NARROWLY TAILORED TO THE ISSUES BEFORE THE JURY.

Fed. Rules of Evid. 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

*Daubert* and its progeny have set forth the four elements that must be met before a proposed expert's testimony will be allowed. The courts should only allow a proposed expert's testimony if it will 1) assist the trier of fact in determining or understanding the facts in issue because the facts are beyond the common knowledge of the average lay person, 2) the proposed expert testimony is relevant, 3) if the proposed expert witness is sufficiently qualified and 4) if there is a reliable basis for expert's opinions and testimony.   FRE 702; *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993); *see also United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002).  The party offering an expert witness bears the burden

of establishing that Rule 702 is satisfied. *See Cholakyan v. Mercedes-Benz, USA, LLC,* 281 F.R.D. 534, 542–43 (C.D. Cal. 2012).

Plaintiffs designated a great deal of expert witnesses, with many experts in the same field as one another: eleven medical doctors who treated the decedent; five nurses; three firefighter/paramedics; and the medical examiner-coroner who performed the autopsy. Dr. Brice Hunt. In addition, Plaintiff has designated a police practices expert, a video expert, and a biomedical engineering expert, and "medical/pathologist expert" Dr. Omalu, as retained experts. *Id*. Dr. Omalu frames his Rule 26 report as address two "medical-legal questions": (1) "What were the bullet wound characteristics and *trajectories of the bullets of the gunshot wounds* Margarito Lopez sustained, and what was his body positioning while he was being shot?"; (1)(a)"Was Margarito Lopez 'advancing' or 'charging' at the officers at the times he was shot by less lethal and lethal rounds?"; (1)(b) "Was Margarito Lopez facing the officers at the time he was shot by less lethal and lethal rounds," (1)(c) "Do the trajectories of the bullet wounds indicate that Margarito Lopez was shot by lethal rounds while he was stationary, heading to the ground"; and (2) "Did Margarito Lopez experience *conscious* pain and suffering, and for how long?" [emphasis added]. See Exhibit "A."

The essence of Dr. Omalu's testimony is that (1) he describes the three gunshot wounds on the areas of the decedent's body, including the *internal* trajectories of the bullet paths within the decedent's body, based on his hypotheses

about the Officer's weapon muzzles and body positioning of the decedent, and (2) he opines as to the obvious pain felt by the decedent while he was conscious, as well as his speculation as to "mental anguish" and so-called "chemical pain" Dr. Omalu speculates the decedent did not feel cognitively feel *after losing consciousness while in a coma*. As to the former, these facts are not in dispute and are cumulative to that of the medical examiner-coroner, Dr. Hunt, who also describes the bullet trajectories in his autopsy report based on his personal examination of the decedent. Dr. Hunt also determined that bullet wound "#2" was the fatal wound, and that the other two bullet wounds were not fatal. As to Dr. Omalu's second opinion, this is all pure speculation and *unconscious* pain and suffering that could not be felt by the decedent is irrelevant and inflammatory. In addition, in his deposition and in his report, Dr. Omalu expressed his perceptions and interpretations of the events based on the video evidence, as to what the decedent was doing and how he was standing at the time the bullets struck his body (e.g., "Therefore, it was less likely that Mr. Lopez was advancing and charging at the officer when he was shot…" *See* Exhibit "A" at p. 8).

Dr. Omalu is not an expert in trajectory, ballistics, firearms, or accident/shooting scene reconstruction, a conclusion his *curriculum vitae* and deposition testimony supports. He also admits he is not a police practices expert, nor is he a "human factors" expert. Dr. Omalu's only area of expertise relevant to this trial is that of an experienced medical examiner-coroner who as performed

many autopsies, the same as the doctor who actually performed the autopsy on the decedent, Dr. Hunt. Dr. Omalu has no disagreement with Dr. Hunt's findings, but Dr. Omalu goes further and opines as to the sequential order of the four gunshot wounds. Defendants do not dispute the location of the bullet wounds in the decedent's body. Dr. Omalu's testimony does not assist the jury in this determination. As such, Dr. Omalu's testimony should be limited and narrowly tailored.

### A. **Dr. Omalu's Perception As To The Underlying Facts Are Not Relevant.**

Fed. R. of Evid. 402, states in relevant part that, ". . . Evidence which is not relevant is not admissible." "Relevant evidence" is "any evidence having any tendency to make the existence of any fact that is of consequence of the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Encompassed in the determination of whether expert testimony is relevant is whether it is helpful to the jury, which is the 'central concern' of Rule 702." *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n.7 (9th Cir. 2002); *see also United States v. Gwaltney*, 790 F.2d 1378, 1381 (9th Cir. 1986) ("The general test regarding the admissibility of expert testimony is whether the jury can receive 'appreciable help' from such testimony.").

At various times in his deposition and in his expert report, Dr. Omalu offers his interpretation of the body-worn video evidence, chiefly that bullet wound #2 is

"consistent with an individual who was shot while he was falling on the ground …" Exhibit "A" at p. 9. Dr. Omalu's opinion is speculative, argumentative, beyond the scope of his expertise, and apparently based on his own interpretation of the video evidence. As such, if the Court determines that his testimony is admissible despite being cumulative to the coroner's, Dr. Omalu should be limited to testifying as to the *internal* trajectory of the bullet wound inside the decedent's body.

### B. Dr. Amalu's Testimony Cannot Invade The Province Of The Jury By Suggesting The Real Facts Or The Law.

Expert opinions cannot be expressed in a way that invades the province of the jury, such as suggesting to the jury what the real facts are or what legal conclusion to draw. "[I]nstructing the jury as to the applicable law is the distinct and exclusive province of the court." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (citations omitted). An expert cannot tell the jury what the law is or how to determine liability based on the law. *Hangarter, supra,* 373 F.3d at 1016; *Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1198 (C.D. Cal. April 13, 2015). An expert's "opinion as to what 'current law' 'mandates' or whether defendants were 'legally' 'justified' in using the force applied against [the plaintiff] usurps the jury's role." *Taylor v. Lemus*, No. CV11-9614 FMO (SSx), 2015 U.S. Dist. LEXIS 186790, 2015 WL 12698306, at *6 (C.D. Cal. June 17, 2015) (citing *Sloman v. Tadlock*, 21 F.3d 1462, 1468 (9th Cir. 1994)).

Experts also are prohibited from informing the jury how the jury should view or find the facts in a given case.  Experts can testify based on *trial* evidence, not based on what the expert believes happened or the decedent's mindset.  *See Willis v. City of Fresno*, 680 F. App'x 589, 591 (9th Cir. 2017).  Yet this is precisely what Dr. Omalu did in his deposition.  Although Dr. Omalu conceded that he is *not* a police practices expert, he also repeatedly engaged in giving his personal opinions as to what he saw in the videos, then cloaked himself as an all-knowing medical expert, and engaged in argumentative factual conclusions that invades the province of the jury.  For example, Dr. Omalu testified in deposition, "video I saw -- in fact, when I heard the gunshots, I stopped; I shuddered; I rewound the video. What just happened here? How was this individual shot? Okay? And that is my opinion from the video I saw. No matter how we twist it, bend it, this individual should not have -- his life should not have been taken away from him.· It is not a crime to be a mental health patient."  Exhibit "B," Omalu Depo. at p. 22:11-21.  In addition, Dr. Omalu inappropriately opined as to what the jury should find as to the force used, testifying that, "There was no reason shooting a mental health patient, because he was not committing any crime. … This was a mental health patient that was converted into a criminal, law enforcement crisis unnecessarily, and the patient was killed rather than providing health care to the patient." Exhibit "B," Omalu Depo at p. 20:7-16.   Yet another example of Dr. Omalu's improper police-practices/psychiatric expert testimony in deposition was when he said, "For a

mental health patient who was in a crisis, everything you're doing is to agitate him; you're making it worse.· And then he stands up with a knife on himself.· He stands up, you shoot him And so there was nothing I saw in that video as a physician, you're asking me, that justified the actions of the officers.· Whatever they did, they failed woefully." Exhibit "B," Omalu Depo at p. 21:5-12.  Another blatantly improper conclusionary example from Dr. Omalu's deposition: "From the medical aspects, as a forensic pathologist who advises law enforcement on a regular basis, the shooting death of Mr. Lopez cannot be justified. It cannot." Exhibit "B," Omalu Depo at p. 25:15-18.  In his deposition, Dr. Omalu also stated as fact, based on *his interpretation* of the videos, that the decedent was having a "mental health crisis" and was no threat to the Officers, a fact that is very much in dispute.

Dr. Omalu's testimony exceeds his expertise as a medical examiner-coroner and invades the jury's province in rendering an opinion as to what the Officers believed when they fired their weapons.  His testimony should be precluded entirely or, at the very least, confined to his medical interpretation of the coroner's report, (not the video evidence) and he should not be allowed to render argumentative, speculative, or conclusory opinions about the force used by the Officers.

///

///

///

///

### C. Dr. Omalu's Opinions Regarding "Chemical Pain" After A Loss Of Consciousness And The Potential Survivability Of Wound "D" Is Not Competent Evidence And Is Inadmissible Speculation And Personal Opinion.

As part of its gate-keeping function, the Court is "supposed to screen the jury from unreliable nonsense opinions, . . .." *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). Expert qualifications, including adequate and relevant training and experience, are required to lay the foundation for the expert's opinion; otherwise, it is mere "unsupported speculation." *See Plush Lounge Las Vegas LLC v. Hotspur Resorts Nev., Inc.*, 371 F. Appx. 719, 720 (9th Cir. 2010). Further, the facts or data upon which the expert relies must either themselves be admissible or "of a type reasonably relied upon by experts in the particular field of forming opinions or inferences upon the subject." *Fed. R. Evid. 703*.

An expert may not attempt to impart his opinion as to a party or witness' subjective knowledge or to create a question of fact as to what a party or witness knew. *Cotton v. City of Eureka*, No. C08-04386 SBA, 2011 U.S. Dist. LEXIS 101657 at *2 (N.D. Cal. Sep. 8, 2011) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 348 n.29 (5th Cir. 2006)). Experts cannot testify that facts be found in a particular way, what anyone in the incident thought or the reasons behind a person's actions. *See, e.g., Valiavicharska v. Celaya*, No. CV10-04847 JSC, 2012 U.S. Dist. LEXIS 8191, at *14 (N.D. Cal. Jan. 24, 2012); *Cotton*, *supra,* 2011 U.S. Dist. LEXIS

101657 at *2. An expert also cannot suggest to the jury what inferences a party should have made. *Watson v. Torruella*, No. CV S-06-1475 LKK EFB P, 2009 U.S. Dist. LEXIS 93729, 2009 WL 324805 at *6 (E.D. Cal. Oct. 7, 2009)).

In his report, Dr. Omalu characterizes his second opinion as to the "Conscious Pain and Suffering" of the Decedent. Dr, Omalu's opinion goes further in rendering opinions as to the decedent's pain and suffering *after* his loss of consciousness, finding that "his body continued to experience debilitating pain and suffering although he was in coma. The human body continues to experience debilitating trauma-induced and physiologic chemical pain and suffering until there is a complete cessation of all bodily functions . . . ." Exhibit "A" at p. 15-16 (Omalu Report). When questioned in deposition as to how he could experience pain after losing consciousness, Dr. Omalu admitted that "the unconscious patient doesn't experience the cognitive aspect of pain" (Exhibit "B" at p. 50:8-9), he nevertheless claims, "An unconscious person does not experience the cognitive aspect of mental pain. So unconscious people typically wouldn't experience mental pain and suffering. But they will experience chemical pain and somatic pain." Exhibit "B," Omalu Depo. at 47:9-12; emphasis added).

Dr. Omalu, a non-lawyer, even went so far as to interpret statutory language regarding pre-death damages, testifying that "In the State of California and other jurisdictions, they don't -- the law does not recognize conscious or unconscious. It just says 'pre-death pain.' Meaning when you suffer an injury, how long do you

survive before you're pronounced dead? So when you determine that period, that is how long you experience pre-death pain." Exhibit "B", Omalu Depo at p. 33:19-25.

Dr. Omalu incorrectly and improperly opines on the law and his testimony is pure speculation and contrary to the plain meaning of "conscious pain and suffering" regarding damages. Even if it were not, such testimony is highly inflammatory, because it suggests wrongdoing by the Defendant Officers, even though there is no claim remaining claim regarding denial of medical care.

### III. DR. OMALU SHOULD BE PRECLUDED FROM TESTIFYING ABOUT ANY PRINT OR FILM MEDIA CONCERNING HIM AND AS TO CERTAIN WHOLLY IRRELEVANT AREAS OF HIS BACKGROUND.

Dr. Omalu has authored several books and gained Hollywood notoriety, primarily on his work regarding CTE and the sport of football. *See* Exhibit "A." None of the books or movies relating to Dr. Omalu have anything to do with the subject matters at issue in this case, and they do not add to his qualifications to testify in this case. Dr. Omalu cannot boost his qualifications by testifying that he is a celebrity. This type of testimony should be excluded under Fed. R. of Evid. 401, 402, and 403.

This evidence also should be excluded under Fed. R. of Evid. 403 as it is more prejudicial than probative, and if allowed, will be unduly prejudicial to the Defendants. This testimony by Dr. Omalu has been specifically excluded by the court in *Cooke, supra,* 2017 WL 6447999. In *Cooke*, Dr. Omalu was the plaintiff's

witness in a death case, where the plaintiff claimed the death was due to asphyxiation. The defendants made a motion *in limine* to exclude the book and movie *Concussion*. The court granted that motion and commented that the way plaintiff sought to use it was:

> an attempt to dazzle the audience with references to fictional accounts of Dr. Omalu's unrelated work and Hollywood's shining an approving spotlight on that work. The danger the jury will focus on brain injuries, the movie, Will Smith, professional football players or Dr. Omalu's fame, none of which are of any consequence to this action, substantially outweighs any probative value.

*Id*. at *4.

The *Cooke* court held that "Plaintiffs need not convince the jury Dr. Omalu is a star to prove he is qualified. Accordingly, accounts of Dr. Omalu's fame and cumulative accounts of Dr. Omalu's research are not admissible." *Id*. at *4. This Court should find the same.

## IV. CONCLUSION.

Defendants respectfully request an order in limine prohibiting Plaintiffs' expert witness, Dr. Bennet Omalu, from testifying or offering any impermissible opinions as discussed herein, including any opinions that tell the jury what the facts and/or the law are, how they should find in this case and that are outside his areas of expertise, which is forensic pathology (including internal bodily trajectory of

wounds) and is *not* accident reconstruction, human factors, criminal forensics, firearms and ballistics.

Date: May 3, 2024            **STONE BUSAILAH, LLP**

By: /s/ Muna Busailah
_____
MUNA BUSAILAH, Esq.
Attorney for Defendants JOSE ZAVALA, JULIO QUINTANILLA