Dale K. Galipo, Esq. (SBN 144074)
LAW OFFICES OF DALE K. GALIPO
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Telephone: (818)347-3333

Luis A. Carrillo, Esq. (SBN 70398)
Michael S. Carrillo, Esq. (SBN 258878)
CARRILLO LAW FIRM, LLP
1499 Huntington Dr., Ste. 402
South Pasadena, CA 91030
Telephone: 626-799-9375

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARITO T. LOPEZ individually and as successor in interest to Margarito E. Lopez, Deceased; SONIA TORRES, KENI LOPEZ, and ROSY LOPEZ, individually, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF LOS ANGELES; JOSE ZAVALA; JULIO QUINTANILLA; and DOES 1-10, inclusive, <br><br> Defendants | Case No. 2:22-cv-07534-FLA-MAAx <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 2 TO EXCLUDE ANY ARGUMENT REGARDING A "SUICIDE BY COP" THEORY** <br><br> [[Proposed] Order *and Declaration of Shannon J. Leap filed concurrently herewith*] <br><br> Trial Date: July 16, 2024 <br> Final Pretrial Conference: May 31, 2024 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD AND TO THIS HONORABLE COURT, PLEASE TAKE NOTICE** that Plaintiffs will and do hereby move to exclude any evidence, testimony, argument, or reference at trial to a "suicide by cop" theory under the following independent and sufficient reasons: (1) such evidence is irrelevant under Rule 401 and 402; (2) such evidence should be excluded under Rule 702 and *Daubert* on the basis that it is misleading and unhelpful to the jury and given that Defendants have not designated an expert qualified to testify on this subject; (3) it should be excluded under Rule 403 as unduly prejudicial and confuses the legal standard and issues; and (4) is improper character evidence under Rule 404. Defendants have not retained any experts who can testify in support of a "suicide by cop" theory, nor have they obtained medical records, mental health records, or any other documentation to support such a speculative theory.  Importantly, the officer-defendants had only second-hand, speculative information to support any "suicide by cop" theory at the time of the shooting. Margarito E. Lopez ("Decedent" or "Mr. Lopez") had not communicated anything to them, and Plaintiffs anticipate that defendants will attempt to introduce the 9-1-1 call made by Plaintiff Rosy Lopez stating that she believed her brother, decedent, was possibly suicidal as well as police reports prepared after the incident describing past calls allegedly involving Mr. Lopez. However, this information was never communicated from dispatch to the officers and the reports are hearsay with no applicable exception.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the records and files of this Court, and upon such other oral and documentary evidence as may be presented at the time of the hearing. A proposed order is submitted herewith.

<u>Statement of Local Rule 7-3 Compliance</u>:  This motion is made following a

conference of counsel during which no resolution could be reached.

Respectfully submitted,

DATED:  May 3, 2024          LAW OFFICES OF DALE K. GALIPO
                            CARRILLO LAW FIRM, LLP


                            By_____*/s/ Shannon J. Leap*_____
                               Dale K. Galipo
                               Renee V. Masongsong / Shannon J. Leap
                               Michael S. Carrillo / J. Miguel Flores
                               *Attorneys for Plaintiffs*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

This case involves the officer-involved shooting death of Margarito E. Lopez (Mr. Lopez) by Los Angeles Police Department Officers, Defendants Jose Zavala and Julio Quintanilla ("defendant officers" collectively). The primary issue in this case is whether the defendant officers used excessive force when they shot Mr. Lopez.

It is anticipated that Defendants will attempt to argue at trial that Mr. Lopez, committed "suicide by cop," and that the Defendants' conduct was therefore justified. By this motion *in limine*, Plaintiffs seek to exclude any argument or testimony that indicates, implies, or suggests that Decedent committed "suicide by cop" or that his behavior or state of mind at the time of the incident is consistent with individuals who engage in "suicide by cop" behavior. Plaintiffs contend that evidence regarding "suicide by cop," should be excluded on the following bases: (1) it is irrelevant under Rule 401 and 402, including because it lacks foundation and calls for speculation; (2) it is misleading and unhelpful to the jury, including because  Defendants have not designated an expert on the subject; (3) it is unduly prejudicial as it confuses the legal standard and confuses the issues; (4) it is improper character evidence under Rule 404; and (5) reports prepared after the shooting alleging that Mr. Lopez had prior contacts with the Mental Evaluation Unit ("MEU") were unknown to the officers at the time of the shooting and are hearsay without an exception. Plaintiffs specifically move *in limine* to exclude any evidence, argument, or testimony suggesting that Mr. Lopez was attempting to commit "suicide by cop" or that the shooting was justified for that reason. Counsel and witnesses should be admonished that the phrase "suicide by cop" should not be used during trial.

Plaintiffs do not deny that Decedent, Margarito E. Lopez was likely suffering from a mental health episode. However, absent designation of an expert qualified to opine on Mr. Lopez's potential suicidality, any argument or evidence suggesting that he was suicidal or wanted to commit suicide by cop is purely speculative. Defendants have not designated any experts who are qualified to offer opinions on this subject, and to attempt to introduce such evidence absent an expert would be highly prejudicial and misleading to the jury. Importantly, the relevant law on Plaintiffs' claims does not provide that it would be objectively reasonable to shoot a person because that person is suicidal. Additionally, it is speculative that Mr. Lopez was suicidal and speculative that he wanted to be killed by the police. Therefore, given the irrelevance, risks of confusion, and because the Defense has not designated or disclosed any retained expert, let alone one that has specifically offered this opinion, they should be precluded from doing so for the first time at trial.

## II.    ARGUMENT

### A.    Any Testimony or Argument Regarding "Suicide by Cop" is Irrelevant, Misleading, Unreliable, Confusing, Assumes Facts Not in Evidence, and Unhelpful to the Jury.

Plaintiffs anticipate that Defendants intend to argue the so-called "suicide by cop" theory, an increasingly familiar allegory used by defense experts and defense attorneys in civil rights cases arising from police shootings.  The "suicide by cop" theory suggests to the jury that blame for the shooting should be shifted onto the decedent.  This theory also suggests that if the decedent were suicidal at the time of the incident, the shooting officers are absolved of responsibility.  The idea is to use the phrase "suicide by cop" as many times as possible, suggesting to the jury that if a person is (1) allegedly suicidal and (2) is injured as a result of a police shooting,

then the decedent was "asking for it" or "brought it on himself" and the shooting is therefore somehow justified.

This theory subtly subverts the applicable law; no law or precedent provides a special set of rules for an alleged "suicide by cop" situation, and there is no corresponding legal doctrine pertaining specifically to suicidal individuals. The law regarding deadly force was unambiguously stated by the Supreme Court in *Graham*: "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. . . . A police officer may not seize an unarmed, nondangerous suspect by shooting [at] him." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). The false and dangerous implication of the "suicide by cop" theory is that there is some special legal exemption for cases involving suicidal individuals—there is not.

In this case, it is undisputed the Defendant Officers had no concrete information that Mr. Lopez was suicidal at the time of the shooting, and only second-hand, speculative information that he may have been suicidal. Furthermore, it is highly speculative that Mr. Lopez specifically wanted to be killed by the police. Moreover, Defendants did not designate an expert to lay the foundation for a suicide by cop theory and to support with reasonable medical probability that such a theory could apply to the facts of this case. Therefore, any argument, implication, or suggestion that Mr. Lopez allegedly intended to have police officers kill him or that Zavala and Quintanilla somehow knew what Decedent was thinking and intended to be shot at the time of the incident for any reason is pure speculation and should be excluded.

### 1.    Decedent's State of Mind is Irrelevant.

Decedent's state of mind (including whether or not he was trying to commit suicide, which is highly disputed) does not bear on any disputed fact or on any

element of any claim or defense.  To determine whether the officers used excessive force, the jury will be asked to consider the following non-exhaustive list of factors: "(1) the nature of the circumstances to which Zavala and Quintanilla were responding; (2) whether Mr. Lopez posed an immediate threat of death or serious bodily injury to Zavala, Quintanilla, or others; (3) whether Mr. Lopez was actively resisting arrest or attempting to evade arrest by flight; (4) the availability of alternative methods to take Mr. Lopez into custody; whether it should have been apparent to Zavala and Quintanilla that Mr. Lopez was emotionally disturbed; (5) the severity of the security problem at issue; and (the relationship between the need for the use of force and the amount of force used."  Ninth Circuit Manual of Model Jury Civil Instructions, No. 9.25 (revised March 2023) (modified). The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001).

Because the reasonableness of the force is judged from an objective standpoint – of a reasonable officer on the scene – neither the state of mind of Decedent nor the states of mind of Zavala or Quintanilla are at issue.  Neither Decedent nor Zavala or Quintanilla's subjective states of mind bear on any of the foregoing factors in determining whether the shooting was reasonable.  Just as the involved officers' subjective underlying intent or motivation (i.e., state of mind) is not relevant in determining the reasonableness of their use of force.  *Price v. Sery*, 513 F.3d 962, 967 (9th Cir. 2008), citing, *Graham v. Conner*, 109 S. Ct. 1865, 1872-73 (1989).  Further, Quintanilla and Zavala had no special insights into Decedent's state of mind at the time that they shot him, and their decision to shoot him was not based on whether they thought Decedent was suicidal or not.  Speculative testimony and argument regarding Zavala and Quintanilla's states of mind (i.e., whether they thought Decedent was suicidal) and Decedent's state of mind (i.e., whether he wanted to have

the police officers kill him or not) is unnecessary to evaluate the facts of this case because Zavala and Quintanilla did not know about Plaintiff Rosy Lopez's statements on her 9-1-1 call, did not know about Mr. Lopez's prior contacts with law enforcement and the MEU. and only knew they were responding to a possible suicide attempt call for a man with a knife.

### 2. Testimony and Opinions Regarding Decedent's State of Mind Pose a Danger of Unfair Prejudice Under FRE 403.

Any reference to a "suicide by cop" theory should alternatively be excluded under Rule 403 of the Federal Rules of Evidence.  The probative value, if any, of the "suicide by cop" theory is *de minimis* for the reasons above.  Speculative argument about what was going on in Decedent's mind is unlikely to help any rational juror determine what actually happened immediately prior to the shooting. Meanwhile, the danger of prejudice is great: the jury will be led astray from the constitutional standard, such that the case is decided not on the basis of the evidence and the law, but based simply on the notion that Zavala and Quintanilla were somehow justified in shooting Decedent if the jury concludes that Decedent was committing "suicide by cop" (which is highly disputed by the evidence).  In other words, the law is clear that it is not proper to shoot someone merely because that person may have a death wish, and to allow such argument would suggest otherwise.

### 3. Any Reference to or Argument Regarding Any "Suicide by Cop" Theory Should be Excluded as Lacking Foundation Because Defendants Have Not Designated Any Expert Under FRE 702.

The district court has a "gatekeeping role" to screen expert testimony, and judges have discretion to determine whether such testimony is admissible, depending on its reliability and relevance.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-97 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).  "[T]he law grants the [court] broad latitude" in analyzing and

determining the reliability of proffered expert witness testimony.  *Kumho*, 526 U.S. at 139, 142.  "The inquiry [under Rule 702] is a flexible one[,]" and its focus "must be solely on principles and methodology, not on the conclusions [the expert] generate[s]."  *Daubert*, 509 U.S. at 594-95.  Reliability is determined by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid," whereas relevance depends upon "whether [that] reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–593.

Defendants should be prohibited from arguing any "suicide by cop" theory because they have not designated any expert who could opine on this subject.  It is also undisputed that at the time of this incident, the officer defendants had no concrete information that Decedent had ever experienced depression or suicidal ideations. The only possible support Defendants have for a suicide by cop theory is the 9-1-1 call to dispatch from Plaintiff Rosy Lopez requesting help because she believed her brother, decedent, may be suicidal and had a knife. Importantly, in making this phone call, Plaintiff Rosy Lopez was only communicating her own thoughts and perceptions in this call, not conveying communications Decedent made to her, which would be hearsay in any event. Although this specific information was not relayed over the radio to the defendant officers, the information that they did have was that they were responding to a possible attempted suicide call, and a rescue ambulance was called. However, this information does not support the speculative assertion that Mr. Lopez was trying to be shot by police. It is particularly prejudicial to have such information introduced or insinuated to the jury when Mr. Lopez cannot speak for himself, given that he died as a result of the shooting.

Each of the four factors in FRE Rule 702 weigh against the potential testimony and opinions about Decedent's state of mind, including whether Decedent was suicidal or was committing "suicide by cop."  First, the "suicide by cop" theory

would not be helpful to the jury and would in fact be misleading, confusing, and inflammatory as discussed above.  Second, the "suicide by cop" theory is lacking in sufficient facts and data because no party has designated an expert qualified to opine on this subject and therefore cannot form any expert opinion on Decedent's mental condition or state of mind (which is also highly speculative and based on hearsay).  Third, for the same reason, any opinions about Decedent's state of mind would *not* be the result of reliable principles.  Fourth, because there are no designated experts qualified to opine on this subject, any possible opinions counsel for defendants may attempt to elicit are not the result of reliable principles reliably applied to the facts of this case for the same reason as above. For these reasons, Defendants' "suicide by cop" theory is merely speculative and lacks foundation.  Defendants should be precluded from making any reference to or argument regarding any "suicide by cop" theory, regardless of whether it is in the form of expert or lay witness testimony, or argument by counsel.

### 4. Evidence of Decedent's State of Mind is Improper Character Evidence Under FRE 404.

Rule 404(a) provides that "[e]vidence of a person's character or a trait of a character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Fed. R. Evid., Rule 404. Plaintiffs contend that any reference at trial to Decedent's state of mind that would indicate depression or suicidal ideations would suggest an improper inference based on character evidence.  This pertains to police records prepared after the incident alleging that Mr. Lopez had prior contacts with MEU, information which the defendant officers did not have at the time of the shooting. It also pertains to the 9-1-1 call that Plaintiff Rosy Torres made requesting help for her brother because *she* thought he may be suicidal. The jury might infer that if Decedent had such a state of mind on a past occasion, then he may have been suicidal at the time of the shooting.

*Palmerin v. Riverside*, 794 F.2d 1409, 1414 (9th Cir. 1985) ("The federal rules bar the use of any circumstantial evidence that requires an inference of a person's character to make it relevant . . . .").  Ninth Circuit case law is clear that "'[c]haracter evidence' is normally not admissible in a civil rights case." *Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir. 1993).  Character must be "in issue," i.e., an essential element of a charge, claim, or defense, for character evidence to be admitted.  *See United States v. Mendoza–Prado*, 314 F.3d 1099, 1103 (9th Cir. 2002).  Character is not an essential element of any of Plaintiffs' causes of action. Because any evidence of Decedent's state of mind, in this case would require an inference as to Decedent's character to make it relevant, it should be excluded from evidence at the time of trial.

### A. This Evidence Should be Excluded as Hearsay Under Rules 801 and 802.

Further, this Court should alternatively exclude any documents containing the information that Plaintiffs seek to exclude on the grounds that the documents are hearsay for which there is no exception under Rules 801 and 802.  This includes the 911 calls and the police reports pertaining to Decedent's prior contacts with the MEU.

### III.   CONCLUSION

For the reasons above, this Court should grant Plaintiffs' Motion *in Limine* No. 2 and exclude any testimony or argument regarding any "suicide by cop" theory.

1

Respectfully submitted,

2

DATED:  May 3, 2024                LAW OFFICES OF DALE K. GALIPO

3                                                       CARRILLO LAW FIRM, LLP

4

5                                              By_____*/s/ Shannon J. Leap*_____

6                                                       Dale K. Galipo
                                                        Renee V. Masongsong / Shannon J. Leap

7                                                       Michael S. Carrillo / J. Miguel Flores
                                                        *Attorneys for Plaintiffs*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28