MICHAEL P. STONE, SBN 91142
MUNA BUSAILAH, SBN 166328
Email: m.busailah@police-defense.com
Members of **STONE BUSAILAH, LLP**
*A Partnership of Professional Law Corporations*
Email: d.danial@police-defense.com
1055 East Colorado Boulevard, Suite 320
Pasadena, California 91106
Telephone: (626) 683-5600
Facsimile: (626) 683-5656

*Attorneys for Defendants* **JOSE ZAVALA and JULIO QUINTANILLA**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARITO T. LOPEZ, SONIA TORRES, KENI LOPEZ, ROSY LOPEZ,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, JOSE ZAVALA, JULIO QUINTANILLA, AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>    Defendants. | CASE NO. 2:22-cv-07534-FLA-MAAx<br><br>*[Assigned to Judge Fernando L. Aenlle-Rocha, USDC-Hon. Mag. Maria A. Audero, USDC-Roybal Bldg]*<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE INFORMATION UNKNOWN TO THE OFFICERS AT THE TIME OF THE SHOOTING**<br><br>FPTC: May 31, 2024<br>TIME: 1:00 PM<br>DEPT: 6B, 6th Floor |

PLEASE TAKE NOTICE THAT Defendants OFFICERS JOSE ZAVALA AND JULIO QUINTANILLA (collectively "Defendant-Officers"), will and hereby do request that this Court deny Plaintiffs' motion to exclude information unknown to the Defendant-Officers at the time of the shooting. Since the parties have been unable to agree to a bifurcation of the liability and damages phases of trial (except

1

punitive damages, if any), the information that Plaintiffs seek to exclude is relevant to damages and therefore admissible. Further, even if Plaintiffs agree to – or the Court orders – bifurcation of liability and damages, the information is also admissible at the liability phase. As such, this Court should deny Plaintiffs' motion.[1]

## I. EVIDENCE OF DECEDENT'S DRUG HISTORY AND TOXICOLOGY RESULTS IS ADMISSIBLE

Plaintiffs seek to exclude "any and all evidence of Decedent's drug and alcohol use on the date of the incident and prior to the incident, including the toxicology report[.]" Dkt. #67, Page ID #:489. Because the evidence is admissible and relevant as to both liability and damages, this Court should deny Plaintiffs' motion.

### A. *Decedent's Drug History and Toxicology Results are Relevant to Liability*

Plaintiffs acknowledge that "the defendant officers generally testified that they suspected that Decedent may be under the influence . . . ." *Id*. at Page ID#:493. Plaintiffs' acknowledgment is fatal to their motion: the Court has found on numerous occasions that

> [i]n cases 'where what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible.' *Boyd v. City & Cnty. of S.F.*,

---

[1] Plaintiffs move to exclude any evidence that Decedent was a gang member. Dkt. #67, Page ID #:491. Because the Defendant-Officers do not intent on introducing such evidence unless Plaintiffs open the door to the same, including potential evidence of any good character of Decedent as any purported support for a higher damages award, if any, this Court should deny this portion of Plaintiffs' motion as moot.

576 F.3d 938, 944 (9th Cir. 2009). Particularly, in excessive force cases where the decedent's preshooting behavior is disputed, evidence of the presence of drugs may be relevant to explain the decedent's unusual behavior or to corroborate the police officer's version of how the decedent acted.

*Zaragoza v. Cnty. of Riverside*, No. 520CV01381SSSSPX, 2024 WL 663235, at *9 (C.D. Cal. Jan. 18, 2024) (collecting cases that stand for the proposition). And Plaintiffs' contention that the Defendant-Officers "did not have any specific information as to whether [Decedent] was under the influence at the time of the shooting or whether he had a history of drug use[,]" Dkt. #67, Page ID#:493, is of no consequence: "A police officer who was unaware that the decedent was intoxicated does not make the evidence inadmissible, especially when the decedent's conduct is in dispute." *Id.* (citing *Turner v. Cnty. of Kern*, No. 1:11–CV–1366 AWI SKO, 2014 WL 560834, at *2 (E.D. Cal. Feb. 13, 2014)).

That the parties' vigorously dispute the Decedent's conduct leading up to the use of force is manifest. First, Plaintiffs concede as much. *See* Dkt. #68, PageID#: 508 (arguing that a suicide-by-cop theory is "highly disputed by the evidence"). Second, the Defendant-Officers and officer-witnesses made clear at their depositions their belief that the Decedent was acting erratically by mumbling to himself, making the sign of the cross, holding a knife to his neck in an apparent attempt or threat to cut himself, and generally acting emotionally and/or mentally disturbed. *See generally* Exhibits A-E, attached to Declaration of Muna Busailah

("Busailah Decl.") (deposition testimony describing Decedent's conduct). Evidence of Decedent's drug use is thus relevant and admissible to corroborate the testimony of the version of the events as will be described by the Defendant-Officers and witness-officers. *See, e.g., Glover v. City of Los Angeles*, No. 2:21-CV-09915-FWS-AS, 2023 WL 8586386, at *4 (C.D. Cal. Oct. 26, 2023("The court concludes evidence regarding Plaintiff's potential intoxication at the time of the incident is relevant to corroborating Defendants' version of events—in other words, that Plaintiff was acting erratically.") (citing *Boyd*, 576 F.3d at 944; and *Turner*, 2014 WL 560834, at *3); *Turner v. Cnty. of Kern*, 2014 WL 560834, at *3 (E.D. Cal. Feb. 13, 2014) (concluding that evidence of drug and alcohol use was relevant "to explain [plaintiff's] conduct and to corroborate the officers' version of events; the evidence is not relevant to the excessive force totality of the circumstances inquiry"); *Est. of Clemente Najera Aguirre v. Cnty. of Riverside*, No. EDCV18762DMGSPX, 2023 WL 3528394, at *2 (C.D. Cal. Mar. 22, 2023) (concluding that evidence of the plaintiff's methamphetamine intoxication at the time of the shooting was relevant, even though not known to the officer at the time of the shooting, as the plaintiff's "erratic behavior in the minutes before the shooting w[ould] be squarely at issue at trial"); *Castro v. Cnty. of Los Angeles*, No. 213CV06631CASSSX, 2015 WL 4694070, at *4–6 (C.D. Cal. Aug. 3, 2015) ("evidence of decedent's intoxication may be admissible to corroborate [the officer's] version of events, since decedent's pre-shooting conduct is disputed").

Indeed, the Defendant-Officers' anticipated "testimony that [Decedent] appeared to be under the influence of drugs is relevant to the key issue in this case: the threat a reasonable officer would have perceived that [Decedent] posed." *Sullivan v. City of Buena Park*, No. SACV2001732CJCADSX, 2022 WL 2965664, at *3–4 (C.D. Cal. Apr. 11, 2022). And "[w]hen an officer perceives that someone is under the influence of drugs, their fear of that subject is heightened, as they may rightfully assume that an intoxicated subject is likely to behave in an unpredictable manner." *Id*. This Court should thus find that Decedent's drug use is admissible, as it is relevant to liability.

### B. *Decedent's Drug History and Toxicology Results is Relevant to Damages*

Evidence of Decedent's drug history and toxicology results is also relevant to Plaintiffs' damages. Indeed, "[D]ecedent's history of drug use is relevant to proof of both economic and non-economic damages." *Castro v. Cnty. of Los Angeles*, No. 213CV06631CASSSX, 2015 WL 4694070, at *7 (C.D. Cal. Aug. 3, 2015). As the Court has previously explained:

> Plaintiffs are attempting to show that they suffered significant damages as a result of their loss of [Decedent's] love, companionship, and affection. Defendants can use evidence of [Decedent's] drug use to rebut Plaintiffs' claims for damages by demonstrating that [Decedent's] relationships with Plaintiffs were strained or that he was estranged from them because of his drug use.

*Barillas v. City of Los Angeles*, No. CV1808740CJCASX, 2021 WL 4434977, at *4–5 (C.D. Cal. Apr. 12, 2021). *See also Castro*, No. 213CV06631CASSSX, 2015 WL 4694070, at *7 (evidence of drug use is relevant to demonstrate strained or affected familial relationships related to loss of consortium and loss of society claims). And "[D]ecedent's history of drug use is relevant to his life expectancy. . . . In turn, life expectancy informs the measure of economic damages." *Id.* (citing in part and quoting *Allen v. Toledo,* 109 Cal.App.3d 415, 424 (1980) for the proposition that the "life expectancy of the deceased is a question of fact for the jury to decide, considering all relevant factors including the deceased's health, lifestyle and occupation.")). *See also Glover v. City of Los Angeles*, No. 2:21-CV-09915-FWS-AS, 2023 WL 8586386, at *4 (C.D. Cal. Oct. 26, 2023) ("The court further concludes Plaintiff's prior use of drugs or alcohol is relevant to determining Plaintiff's economic damages during the second phase of trial."). This Court should thus find that Decedent's drug use is admissible, as it is relevant to damages.

    C. <u>The Probative Value of Decedent's Drug History and Toxicology Results is Not Substantially Outweighed by Any Reason Enumerated in FRE 403, and the Evidence will Not Be Used for Prohibited Purposes under FRE 404</u>

Plaintiffs assert that evidence of Decedent's drug history and toxicology results is inadmissible under Fed. R. Evid. 403 because the evidence is "unduly prejudicial, confusing, and a waste of time." Dkt. #67, Page ID #:494. Plaintiffs further assert that the evidence is inadmissible character evidence Fed. R. Evid.

404. Both assertions fail.

First, the probative value of the evidence is significant, as explained above, as to both liability and damages. And evidence of drug use is not inherently "inflammatory in nature, nor will it distract the jury from considering all the other evidence when determining whether Plaintiffs suffered a loss of love, companionship, and affection, and if so, the monetary value of that lost love, companionship, and affection." *Barillas v. City of Los Angeles*, No. CV1808740CJCASX, 2021 WL 4434977, at *4–5 (C.D. Cal. Apr. 12, 2021). *See also Glover v. City of Los Angeles*, No. 2:21-CV-09915-FWS-AS, 2023 WL 8586386, at *4 (C.D. Cal. Oct. 26, 2023) (finding probative value of evidence of drug use not substantial outweighed by prejudice). To be sure, "evidence of drug . . . use is relevant and probative on the issue of future damages, and because such damages are central to Plaintiff[s'] claim, . . . the prejudicial effect of Plaintiff[s'] drug . . . use does not substantially outweigh their probative value." *Morris v. Long*, No. 1:08-CV-01422-AWI, 2012 WL 1498889, at *7 (E.D. Cal. Apr. 27, 2012). Of course, there could be some prejudicial effect from the presentation of such evidence, "[b]ut all adverse evidence carries some prejudicial effect to the opposing party." *Zaragoza v. Cnty. of Riverside*, No. 520CV01381SSSSPX, 2024 WL 663235, at *9 (C.D. Cal. Jan. 18, 2024). That the evidence is unfavorable to Plaintiffs does not, however, render the evidence

unfairly prejudicial.[2] *See id.* This Court should therefore find that the probative value of Decedent's drug use and evidence of his toxicology results are not outweighed by any reason unerumated in Fed. R. Evid. 403.

Second, Decedent's drug history and toxicology results are not inadmissible under Fed. R. Evid. 404, because the evidence will be used for purposes other than improper character evidence, as explained above. Fed. R. Evid. 404(b) renders evidence of a person's character or trait inadmissible when it is used "in order to show action in conformity therewith." *Lopez v. Aitken*, No. 07-CV-2028-JLS-WMC, 2011 WL 672798, at *2 (S.D. Cal. Feb. 18, 2011) (internal quotations omitted). But where, as here, "drug use evidence is not being offered to prove conduct in accordance with past acts," such evidence is admissible. *Gopen v. Regents of the Univ. of California*, No. SACV152062JVSKESX, 2017 WL 11634361, at *2 (C.D. Cal. Mar. 6, 2017). This Court should therefore find that the evidence is not inadmissible under Fed. R. Evid. 404, as the Defendant-Officers seek to use the evidence for purposes other than improper character evidence.

---

[2] Plaintiffs' argument that "[e]vidence of drug use can only serve to unjustly inflame a jury's passions and prejudices against a party" likewise falls flat. "Plaintiffs improperly assume that all eight jurors will dislike users of drugs and that these jurors could not be removed from the case through *voir dire*." *Zaragoza v. Cnty. of Riverside*, No. 520CV01381SSSSPX, 2024 WL 663235, at *8–10 (C.D. Cal. Jan. 18, 2024). And if there is a genuine possibility of unfair prejudice, this Court could always provide a limiting instruction to the jury. *See id.*; *Castro v. Cnty. of Los Angeles*, No. 213CV06631CASSSX, 2015 WL 4694070, at *7 (C.D. Cal. Aug. 3, 2015).

## II.   EVIDENCE OF DECEDENT'S CRIMINAL HISTORY AND PRIOR CONTACTS WITH THE MENTAL HEALTH UNIT IS ADMISSIBLE

Plaintiffs seek to exclude "any evidence of Decedent's limited criminal history and contacts with law enforcement, which includes two misdemeanor arrests in 2017 and 2018, as well as four incidents with the Mental Evaluation Unit ('MEU') between 2012 and 2021." Dkt. #67, Page ID #:489. Because the evidence that Plaintiffs seek to exclude is relevant and otherwise admissible, this Court should deny Plaintiffs' motion.

First, Decedent's criminal history and his interactions with MEU are relevant to damages. *See, e.g., V.V. v. City of Los Angeles*, No. 2:21-CV-01889-MCS-PD, 2022 WL 3598167, at *6 (C.D. Cal. July 6, 2022) ("The decedent's criminal history is relevant to the damages phase."); *N.W. v. City of Long Beach*, No. EDCV141569VAPSPX, 2016 WL 9021966, at *5 (C.D. Cal. June 7, 2016)("Decedent's criminal history may be relevant to the issue of damages, as it will inform the jury's decision regarding future earnings."); *Castro v. Cnty. of Los Angeles*, No. 213CV06631CASSSX, 2015 WL 4694070, at *4 (C.D. Cal. Aug. 3, 2015). And because the Defendant-Officers intend to use such evidence to refute or counter alleged entitlement to damages, the evidence will not be under for an improper purpose under Fed. R. Evid. 404. Nor does the probative value of the evidence substantially outweigh the danger of unfair prejudice, for the reasons described in Section I.

Second, evidence of Decedent's prior contacts with MEU is admissible as to both liability of damages. Certainly, Plaintiffs put Decedent's mental health squarely at issue in this lawsuit. *See generally* Dkt. #1, ¶¶ 30, 34 (alleging in part that "decedent was having a mental health crisis"; that the Defendant-Officers "did not investigate whether Decedent was in fact having suicidal ideations, or whether Decedent was having a mental crisis"; that the Defendant-Officers did not notify the "Mental Evaluation Unit [] or Systemwide Mental Assessment Response Team'; and that "[t]he use of force against Decedent was excessive and objectively unreasonable under the circumstances, particularly because Defendants were aware that Decedents was suffering from a mental illness, was going through a potential mental health crisis") (capitalizations omitted). As such, their request to exclude evidence of Decedent's history of mental instability is questionable at best.

Further, evidence of Decedent's mental health history is relevant to corroborate the Defendant-Officers' version of the facts and for credibility purposes, even if the Defendant-Officers lacked knowledge of Decedent's history. *Crawford v. City of Bakersfield*, 944 F.3d 1070 (9th Cir. 2019) – a fatal shooting excessive force case – is instructive. In *Crawford*, the Ninth Circuit considered the district court's exclusion of testimony concerning the decedent's history of schizophrenia and mental illness. *Id.* at 1075-76. The district court excluded such evidence on the basis that the officer's had no knowledge of the decedent's mental illness and that the decedent's past behavior was not "not relevant to the issue of

whether [the officer] should have known that [the decedent's] behavior leading up to the shooting could have been caused by mental illness." *Id.* at 1076 (certain alterations changed and quotations omitted) (cleaned up). The Ninth Circuit, however, reversed the district court's evidentiary determination, holding that the court abuse its discretion in excluding the evidence. *Id.* at 1079, 1081. The Ninth Circuit reasoned that testimony of the decedent's

> past behavior and treatment was relevant to whether he was in fact mentally ill at the time. Evidence that [the decedent] had *previously* behaved in ways consistent with mental illness and had been taken to mental health providers for treatment, makes it more likely that he *continued* to suffer from mental illness on the day of the shooting. In turn, whether [the decedent] was *in fact* mentally ill that day is relevant to whether he would have *appeared* to be mentally ill, and thus to whether [the officer] knew or should have known that [the decedent] was mentally ill; after all, the existence of some underlying fact tends to make it more likely that a person knew or should have known that fact.

*Id*. at 1078-79 (emphasis in original). The Ninth Circuit thus concluded that testimony about the decedent's history of mental illness was relevant, even if the officer had no knowledge of it. *Id*. at 1079 (citing and quoting *Boyd v. City & Cty. of San Francisco*, 576 F.3d 938, 944 (9th Cir. 2009) for the proposition that "where what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible[,]" and *Estate of Escobedo v. Martin*, 702 F.3d 388, 400 (7th Cir. 2012)

for the proposition that "evidence unknown to officers at the time force was used" may be relevant in evaluating credibility, such as by making it more or less likely that "a suspect acted in the manner described by the officer").

Similarly, here, in addition to Plaintiffs' alleging that Decedent was "having a mental health crisis" during the encounter that provides the basis of this lawsuit, *see generally* Dkt. #1, ¶30, evidence of Decedent's history of mental illness is relevant to establish whether Decedent was *in fact* mentally ill and *currently* experiencing a mental health crisis during the encounter. Indeed, evidence of past mental health crises makes it more likely that Decedent was suffering such a crisis during the event. *See id*. at 1078-79. Further, Decedent's history of mentally illness corroborates and confirms the Defendant-Officers' rendition of the events—particularly that Decedent was acting unpredictably and engaging in volatile behavior. *See Boyd v. City & Cty. of San Francisco*, 576 F.3d 938, 944 (9th Cir. 2009) (finding evidence that supports officer's version of events relevant and admissible when pre-shooting conduct is in dispute). As such, the evidence is relevant, admissible, and lends credibility to the Defendant-Officers' perceptions. This Court should therefore find that evidence of Decedent's history of mental health is admissible.[3]

---

[3] The evidence is further admissible on the basis that it informs the jury's reasonableness determination under *Graham*. *See Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001) ("emphasiz[ing] that where it is or should be apparent to the officers that the individual involved is [mentally or] emotionally disturbed, that is a factor that must be considered in determining, under *Graham,* the reasonableness of the force employed").

## III. EVIDENCE OF THE 911 CALLS IS ADMISSIBLE

Plaintiffs claim that evidence of the 911 calls in this case should be excluded because the Defendant-Officers "did not hear these calls, and were therefore not responding or acting in reaction to the calls." Dkt. #67, Page ID #:496. Not so. The undisputed evidence establishes that the Defendant-Officers were aware of the nature of the 911 calls and responding to the same. Exhibits A-E, attached to Busailah Decl. And even if they did not hear the calls specifically, the defense is entitled to introduce the calls to set the scene generally for LAPD's initial and overall response to the incident.

Plaintiffs further claim that "the emotional nature of these calls would confuse and mislead the jury . . . ." Plaintiffs' claim, however, is wholly conclusory and lacks any explanation or support. That the evidence could be emotional in nature and therefore would confuse and mislead the jury is tenuous at best. To be sure, the 911 call is not inherently confusing or misleading. Further, the evidence lays the foundation for the entire event that provides that basis of Plaintiffs' claims.

Plaintiffs lastly claim that the 911 would be cumulative "of the information from these calls relayed by dispatch to the police radios."[4] But Plaintiffs' claim improperly assumes that the defense intends to introduce the information of the

---

[4] Defendants question the genuineness of the deduction that logically follows Plaintiffs' argument—specifically, whether Plaintiffs would actually concede the admissibility of the dispatch calls. Of course, Plaintiffs have already made catch-all hearsay arguments to exclude "information" and non-descript "documents," so the Defendant-Officers are left to guess whether the dispatch calls are lumped into the broad categories of material that Plaintiffs seek to exclude.

calls as relayed by dispatch. It is within the defense's strategy to choose – rather than have Plaintiffs choose – which evidence to use. But the defense should not even have to choose: the 911 calls and police radio dispatch could serve different purposes at trial. And neither category of evidence would itself – or together – take up much time at all.

Each argument Plaintiffs raise to exclude evidence of the 911 calls fails. This Court should therefore find that 911 calls are relevant and admissible.

## IV. HEARSAY

In Plaintiffs' tireless pursuit to have the above-evidence excluded, Plaintiffs request that the Court "exclude *any Documents* containing the *information* that Plaintiffs seek to exclude on the grounds that the documents are hearsay for which there is no exception under Rules 801 and 802." Dkt. #67, Page ID #:497 (emphasis added). Of course, it is difficult to respond to Plaintiffs' overbroad and ambiguous request to exclude "any document[]" that "contain[s] the information" that they "seek to exclude." *Id*. The "information" and "documents" that Plaintiffs have identified, however – including the 911 calls, police reports, medical records, and toxicology report – are either non-hearsay, *see, e.g.,* Fed. R. Evid. 801(d)(2)(A), fall under well-known exceptions to hearsay, *see, e.g.,* Fed. R. Evid. 803(1)-(2)(present sense impression and excited utterance); *id*. at 803(6) (business record), *id.* at 803(4) (medical record), and/or will be used for non-hearsay purposes (such as the effect on the listener). This Court should decline Plaintiffs' invitation

to exclude whole categories of material and "information" under the guise of hearsay. Rather, this Court should allow the Defendant-Officers the opportunity to establish the requisite foundation for such records to satisfy one or more of the exceptions to hearsay (or establish that the documents will be used for non-hearsay purposes). This Court should thus deny Plaintiffs' motion.

## V.   CONCLUSION

Plaintiffs' motion to exclude information unknown to the Defendant-Officers at the time of the shooting fails in its entirety. The evidence Plaintiffs seek to exclude from trial is relevant to both liability and damages, and this Court should permit the Defendant-Officers to introduce the same at trial.

Date:  May 16, 2024               **STONE BUSAILAH, LLP**

                                  By: /s/ Muna Busailah
                                      MUNA BUSAILAH, Esq.
                                      Attorney for Defendants JOSE ZAVALA,
                                      JULIO QUINTANILLA