# EXHIBIT A

```
 1                UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3

 4    MARGARITO T. LOPEZ, SONIA TORRES,    )
      KENI LOPEZ, ROSY LOPEZ,              )
 5                                         )
                  Plaintiffs,              )
 6                                         )
                  vs.                      )Case No.
 7                                         )2:22-CV-07534-FLA-MAA
      CITY OF LOS ANGELES, JOSE ZAVALA,    )
 8    JULIO QUNITANILLA, and DOES 1 through)
      10, inclusive,                       )
 9                                         )
                  Defendants.              )
10    _____)

11

12

13          [CONTAINS CONFIDENTIAL TESTIMONY PORTIONS]
                 [PAGES 37-39 BOUND SEPARATELY]
14

15          REMOTE VIDEOCONFERENCE DEPOSITION OF

16                      JOSE ZAVALA

17               THURSDAY, JULY 27, 2023

18

19

20

21

22

23    Reported Stenographically By:

24    Jinna Grace Kim, CSR No. 14151

25    Job No.:   459255
```

1    A.   Can you repeat that, sir?
2    Q.   Sure.  During that seven or eight minutes, did you
3    hear him verbally threaten to harm any of the officers?
4    A.   No, sir.
5    Q.   Did you hear him verbally threaten to harm any
6    individuals in the area?
7    A.   Prior from us arriving to the location, we received
8    a radio call by citizens that he was chasing citizens with a
9    butcher knife, threatening them with a butcher knife, the
10   same butcher knife that he had in hand.
11   Q.   Let me just make sure you understand my question.
12        Right now I'm just talking about the seven or eight
13   minutes that you were watching him.
14   A.   Okay.
15   Q.   And then I'll ask you about the information you had
16   beforehand.
17   A.   Yes, sir.
18   Q.   Okay.  So during the seven or eight minutes that you
19   were watching him, did you hear him verbally threaten to harm
20   anyone?
21   A.   Himself, cutting his throat in his hand.
22   Q.   Right.  But did you hear him say, "I'm going to hurt
23   you, I'm going to kill you," or anything like that to any
24   other person?
25   A.   No, sir.  He was just mumbling stuff, no, sir.

 1  staircase, sir.
 2      Q.  And you've already told me, I think, you didn't see
 3  him chasing anyone around with a knife, did you?
 4      A.  No, sir.
 5      Q.  In fact, your observations of him were that he might
 6  be having some type of a mental health crisis; is that
 7  fair?
 8      A.  No, sir.
 9      Q.  Well, in your statement you said he was mumbling to
10  himself and seemed distraught?
11      A.  Yes.  Possibly under the influence of an unknown
12  controlled substance.
13      Q.  Do you recall in your statement saying that you saw
14  him talking to himself?
15      A.  Yes, sir.
16      Q.  Do you recall in your statement you heard him
17  mumbling?
18      A.  Yes, sir.  Consistent to somebody being under the
19  influence of unknown controlled substance, yes, sir.
20      Q.  Right now I'm not talking about what it's consistent
21  with.
22      A.  Yes, sir.
23      Q.  I'm asking if you said that in your statement, that
24  he was talking to himself, mumbling, and appeared distraught.
25      A.  Yes, sir.

Case 2:22-cv-07534-FLA-MAA   Document 78-1   Filed 05/17/24   Page 5 of 8   Page ID #:628

| | MARGARITO T. LOPEZ, ET AL. vs CITY OF LOS ANGELES, ET AL. | |
|---|---|---|
| Confidential | Jose Zavala on 07/27/2023 | Page 49 |

1  is experiencing a mental health crisis?

2    A.   From my experience when they're possibly under the

3  influence of an unknown controlled substance, they start

4  cutting themselves, they start mumbling which is how Mr.

5  Margarito Lopez was.

6        So my perspective, it appeared he was under the

7  influence of a controlled substance.

8    Q.   You thought he was talking to God trying to get the

9  courage to cut his throat?

10       That's what you said in your statement; is that

11  what you thought at the time?

12   A.   He was cutting his throat, sir, and mumbling and

13  talking about God.  He was doing it.

14   Q.   Right.  And you said in your statement it appeared

15  when he was talking to God, he was trying to get the courage

16  to cut his throat.

17       Do you remember saying that?

18   A.   Yes, sir, I remember.

19   Q.   And you told him several times you were there to

20  help him out; is that right?

21   A.   Correct, yes, sir.

22   Q.   When was the last time you told him you were there

23  to help him out before you shot him?

24   A.   Right before that, sir.

25   Q.   So you told him you were there to help him out right

1   Q.   And that appeared to strike him in the chest?

2   A.   Strike him in the chest, and nothing fazed him.

3        It just bounced right off his chest, sir.

4        I seen these 40-millimeter rounds knock down people

5   over six-feet, over 200 pounds, and this round just bounced

6   off his chest.  Mr. Margarito Lopez's moderate stature didn't

7   even faze him.  It just bounced off his chest.

8   Q.   How soon after that did he sit down?

9   A.   Which led me to believe he was possibly under the

10  influence of a controlled substance.

11  Q.   Were you trained you can shoot someone who you think

12  is under the influence?

13       MS. BUSAILAH:  Objection.  Misstates his testimony;

14  incomplete hypothetical.

15  BY MR. GALIPO:

16  Q.   I'm just asking you because you keep saying that

17  about ten times so far; that you thought he was under the

18  influence of a controlled substance.

19       Were you trained that you can shoot someone if you

20  think they're under the influence?

21  A.   Well, depends, sir.  If he's posing a threat to us

22  trying to cause death or serious bodily injury, yes, sir, we

23  can.

24  Q.   I see.  And that would have to an immediate threat

25  of death or serious bodily injury; correct?

1    A.    Extremely important, yes, sir.
2    Q.    Less-lethal, were you trained that's important in
3  these situations?
4    A.    Extremely important, yes, sir.
5    Q.    And I think you said distance plus cover equals
6  time?
7    A.    Yes, sir.
8    Q.    That's part of your training; right?
9    A.    Correct, yes, sir.
10    Q.    That's why you were taking cover; correct?
11    A.    That's why we were taking cover where we were at,
12  yes, sir, correct.
13    Q.    And that's why you had distance also; correct?
14    A.    Yes, sir.  Just to a certain extent because he had
15  already was chasing people, citizens, with a butcher knife.
16    So we couldn't redeploy any further.
17    Q.    Well, you never saw him chasing anyone, did you?
18    A.    Citizens were calling, sir.
19    Q.    No.  I'm asking if you saw that.
20    A.    No, I didn't see it.  But we received radio calls.
21    Q.    And did you decide where to put your patrol vehicle,
22  or did someone else tell you where to put it?
23    A.    No, sir.  That where -- that's what I decided to,
24  sir.
25    Q.    Okay.  And so you told me about the importance of

```
 1                    CERTIFICATE

 2                         OF

 3      CERTIFIED STENOGRAPHIC SHORTHAND REPORTER

 4

 5           I, JINNA GRACE KIM, CSR No. 14151, a Certified

 6   Stenographic Shorthand Reporter of the State of California,

 7   do hereby certify:

 8           That the foregoing proceedings were taken before me

 9   at the time and place herein set forth;

10           That any witnesses in the foregoing proceedings,

11   prior to testifying, were placed under oath;

12           That a verbatim record of the proceedings was made

13   by me, using machine shorthand, which was thereafter

14   transcribed under my direction;

15           Further, that the foregoing is an accurate

16   transcription thereof.

17           I further certify that I am neither financially

18   interested in the action, nor a relative or employee of any

19   attorney of any of the parties.

20

21           IN WITNESS WHEREOF, I have subscribed my name, this

22   date:  July 27, 2023.

23
                         _____
24
                          Jinna Grace Kim, CSR No. 14151
25
```