# EXHIBIT B

```
 1                     STATES DISTRICT COURT

 2                   CENTRAL DISTRICT OF CALIFORNIA

 3

 4   MARGARITO T. LOPEZ, SONIA TORRES,    )
     KENI LOPEZ, ROSY LOPEZ,              )
 5                                        )
              Plaintiffs,                 )
 6                                        )
              vs.                         )Case No.
 7                                        )2:22-CV-07534-FLA-MAA
     CITY OF LOS ANGELES, JOSE ZAVALA,    )
 8   JULIO QUNITANILLA, and DOES 1 through)
     10, inclusive,                       )
 9                                        )
              Defendants.                 )
10   _____)

11

12

13         [CONTAINS CONFIDENTIAL TESTIMONY PORTIONS]
                [PAGES 71-74 BOUND SEPARATELY]
14

15          REMOTE VIDEOCONFERENCE DEPOSITION OF

16                    JULIO QUINTANILLA

17                 THURSDAY, JULY 27, 2023

18

19

20

21

22

23   Reported Stenographically  By:

24   Jinna Grace Kim, CSR No. 14151

25   Job No.:  459255
```

Case 2:22-cv-07534-FLA-MAA   Document 78-2   Filed 05/17/24   Page 3 of 8   Page ID #:634

| MARGARITO T. LOPEZ, ET AL. vs CITY OF LOS ANGELES, ET AL. | | |
|---|---|---|
| Confidential | Julio Quintanilla on 07/27/2023 | Page 24 |

 1  being struck with the 40-millimeter, had you heard him

 2  verbally threaten to harm anyone with your own eyes?

 3      A.   No.  Just the radio comments of the radio call from

 4  the RTO, but me hearing him, I did not hear him.

 5      Q.   Did you -- and I just want to know what you,

 6  yourself saw on-scene prior to him sitting down that last

 7  time.

 8           Did you ever see him trying to attack anyone with

 9  this knife?

10      A.   Besides the radio call, the comments of the call,

11  and him just harming himself, no.

12      Q.   So, for example, you, yourself didn't see him

13  chasing people or charging at them or anything like that; is

14  that a fair statement?

15      A.   That's a fair statement.

16      Q.   How long do you think you were observing him as of

17  the time he sat down towards the bottom of the steps?

18      A.   It was a --

19           MS. BUSAILAH:  Wait.  Objection.

20           Are you referencing to at the time after he sat down

21  or before?  The question is vague as phrased.

22  BY MR. GALIPO:

23      Q.   Okay.  As of the time he sat down.

24           So once he sat down at the bottom of the steps after

25  being struck with the 40-millimeter, for how long of a period

| | | |
|---|---|---|
| 1 | Q. | You were partnered up with another officer at the |
| 2 | time? | |
| 3 | A. | With Officer Zavala, yes. |
| 4 | Q. | You were both riding in the same car? |
| 5 | A. | Yes. |
| 6 | Q. | And was that the first day you were partners with |
| 7 | Officer Zavala, or had you been partners prior to that day? | |
| 8 | A. | We were partners prior to that day. |
| 9 | Q. | How long approximately had you been partners with |
| 10 | Officer Zavala? | |
| 11 | A. | On and off approximately two years. |
| 12 | Q. | And was he driving the car that day? |
| 13 | A. | Yes, he was. |
| 14 | Q. | When you first saw Mr. Lopez, was he sitting down on |
| 15 | the steps? | |
| 16 | A. | When I first arrived on-scene, he was sitting down |
| 17 | holding the butcher knife to his neck on the steps. | |
| 18 | Q. | Did you notice at first whether he had any injuries |
| 19 | to himself? | |
| 20 | A. | I didn't observe that. |
| 21 | Q. | Did you have any specific information that anyone |
| 22 | else had been injured at that time? | |
| 23 | A. | I knew that he had chased citizens with a butcher |
| 24 | knife, and I hoped that no citizen had got stabbed or cut, | |
| 25 | but I wasn't a 100 percent sure if a victim had, in fact, | |

1   been injured by him chasing them.

2   Q.   I'm just wondering whether something was broadcast
3   over the police radio that he had injured anyone.

4   A.   Besides him chasing someone with a butcher knife, I
5   don't believe I heard anything else.

6   Q.   Did you have an understanding as to whether or not
7   he lived at that residence?

8   A.   No.  I didn't know where he lived at.

9   Q.   Did you know his name at the time?

10  A.   No.

11  Q.   Did you know if he had any criminal history, for
12  example?

13  A.   I didn't know if he had criminal history.

14  Q.   Were you generally observing him from the open door
15  of your vehicle on the passenger side?

16  A.   Yes.

17  Q.   You said in your statement, and I'm going to quote.

18       "I knew he needed help somehow, you know, and I know
19  he was probably going through something or he was under
20  something."

21       Do you recall saying that in your statement?

22  A.   I do.

23  Q.   Why did you think he was going through something?

24  A.   He was going through an episode based on my training
25  and experience.  You know, people that are under the

Case 2:22-cv-07534-FLA-MAA   Document 78-2   Filed 05/17/24   Page 6 of 8   Page ID #:637

| MARGARITO T. LOPEZ, ET AL. vs CITY OF LOS ANGELES, ET AL. | | |
|---|---|---|
| Confidential | Julio Quintanilla on 07/27/2023 | Page 28 |

1  influence of some type of narcotic, you know they -- they
2  tend to, you know, go through different old memories maybe or
3  old incidents that they went through.
4        And so I felt that he was probably under influence
5  of some narcotic and going through some episode.
6     Q.  Did you hear him referencing God at some point?
7     A.  I didn't.
8     Q.  Did you see him appear to be mumbling at some
9  point?
10    A.  No.
11    Q.  Talking to himself?
12    A.  No.
13    Q.  Could you make out any words he was saying at
14 anytime?
15    A.  No.  I just saw him do you a crucifix, and that's
16 all.
17    Q.  What do you mean by the crucifix?
18    A.  He did a crucifix, you know, when you kind of -- the
19 sign of a cross?
20    Q.  And when did you see him make the sign of a cross?
21    A.  I want to say he did it twice.  Once on top of the
22 stairway, and then once when he was at the bottom of the
23 stairway.
24    Q.  Is that something you generally see people under the
25 influence of narcotics do, the sign of the cross?

 1    A.   Yeah.  They do all types of random stuff when you're
 2    under the influence.
 3    Q.   Okay.  I take it you've seen people do the sign of
 4    the cross even not being under the influence; is that fair?
 5    A.   Yeah, regular people, yes.
 6    Q.   Now, you were asked in your statement, you know, to
 7    describe what you observed essentially; correct?
 8    A.   That's correct.
 9    Q.   And you had an attorney present for your
10    interview?
11    A.   I did.
12    Q.   Do you know if you happened to have the same
13    attorney for your interview that Officer Zavala had for
14    his?
15         MS. BUSAILAH:  Objection.  Relevance.
16    BY MR. GALIPO:
17    Q.   If you know.
18    A.   I don't know.
19    Q.   It appears from your transcript that you had an
20    attorney Leslie Wilcox.
21         Does that sound correct?
22    A.   She was my attorney, yes.
23    Q.   And it appears from your statement that one of the
24    reasons that you gave for shooting him is that there was a
25    civilian right next to him, maybe a few feet away from him on

```
 1                      CERTIFICATE

 2                          OF

 3         CERTIFIED STENOGRAPHIC SHORTHAND REPORTER

 4

 5         I, JINNA GRACE KIM, CSR No. 14151, a Certified

 6  Stenographic Shorthand Reporter of the State of California,

 7  do hereby certify:

 8         That the foregoing proceedings were taken before me

 9  at the time and place herein set forth;

10         That any witnesses in the foregoing proceedings,

11  prior to testifying, were placed under oath;

12         That a verbatim record of the proceedings was made

13  by me, using machine shorthand, which was thereafter

14  transcribed under my direction;

15         Further, that the foregoing is an accurate

16  transcription thereof.

17         I further certify that I am neither financially

18  interested in the action, nor a relative or employee of any

19  attorney of any of the parties.

20

21         IN WITNESS WHEREOF, I have subscribed my name, this

22  date:  July 27, 2023.

23
                          _____
24
                          Jinna Grace Kim, CSR No. 14151
25
```