# EXHIBIT C

CERTIFIED TRANSCRIPT

# LOPEZ

VS.

# CITY OF LOS ANGELES, ET AL

## ALEX YIM

*September 20, 2023*



JONNELL AGNEW & ASSOCIATES
(800) 524-DEPO

COURT REPORTERS/VIDEOGRAPHERS/INTERPRETERS

```
 1                UNITED STATES DISTRICT COURT
 2               CENTRAL DISTRICT OF CALIFORNIA
 3
 4   MARGARITO T. LOPEZ, SONIA          )
     TORRES, KENI LOPEZ, ROSY LOPEZ,    )
 5                                      )
                  Plaintiffs,           )
 6                                      )
            vs.                         ) No. 2:22-CV-07534-
 7                                      )    FLA-MAA
     CITY OF LOS ANGELES, JOSE          )
 8   ZAVALA, JULIO QUINTANILLA, AND     )
     DOES 1 THROUGH 10, INCLUSIVE,      )
 9                                      )
                  Defendants.           )
10   _____)
```

**CERTIFIED TRANSCRIPT**

15     Videotaped deposition of ALEX YIM, a witness, taken
16  on behalf of the Plaintiffs, before Suzanne Scheller,
17  CSR No. 12652, commencing on Wednesday, September 20,
18  2023, at 10:05 a.m., taken via Zoom, pursuant to Notice
19  of Taking Deposition.

| | | |
|---|---|---|
| 1 | A. It was for a stolen vehicle. | 10:30:46 |
| 2 | Q. And was Officer Prisk there with you? | |
| 3 | A. Yes, sir. | |
| 4 | Q. And had you wrapped up that -- that call | |
| 5 | regarding the stolen vehicle? | 10:31:08 |
| 6 | A. Yes, sir. | |
| 7 | Q. And when the call came regarding | |
| 8 | Mr. Lopez, can you describe to us what was said over | |
| 9 | the police radio regarding that call? | |
| 10 | A. The nature of the call was an ambulance | 10:31:22 |
| 11 | attempt suicide, I believe. | |
| 12 | Q. Was there any descriptions over the radio | |
| 13 | when you first heard of this matter regarding how | |
| 14 | this person was attempting suicide? | |
| 15 | A. Am I allowed to -- | 10:31:50 |
| 16 | MR. FORD: Sorry. I don't know if he can | |
| 17 | answer the question without reviewing a report. | |
| 18 | But go ahead and try. | |
| 19 | THE WITNESS: I don't recall at this time. | |
| 20 | BY MR. FLORES: | 10:32:00 |
| 21 | Q. Okay. And how long -- did you respond to | |
| 22 | that call? | |
| 23 | A. How long did it take me? | |
| 24 | Q. Well, let me ask you a preliminary. Did | |
| 25 | you respond to this call regarding this individual | 10:32:21 |

| | | |
|---|---|---|
| 1 | the time lethal force was used, did you have the | 10:53:56 |
| 2 | 40-millimeter? | |
| 3 |     A.   I had the 40, yes, sir. | |
| 4 |     Q.   In other words, you didn't switch weapons | |
| 5 | or tools at any point up to the time lethal force | 10:54:08 |
| 6 | was used? | |
| 7 |     A.   No, sir. | |
| 8 |     Q.   Okay.  While you were there at the scene, | |
| 9 | did you ever learn of Mr. Lopez issuing any threats | |
| 10 | before you got there? | 10:54:39 |
| 11 |         MS. LAWRENCE:  That's vague and ambiguous. | |
| 12 |         MR. FORD:  Yeah.  Vague and ambiguous to | |
| 13 | the term "any threats."  Join. | |
| 14 |         Go ahead and answer, if you can. | |
| 15 |         MS. LAWRENCE:  And before he arrived.  So | 10:54:50 |
| 16 | do you mean over the radio? | |
| 17 |         MR. FORD:  Yeah.  That would call for | |
| 18 | speculation. | |
| 19 |         But go ahead and answer. | |
| 20 |         THE WITNESS:  I'm so sorry.  Can you | 10:54:58 |
| 21 | repeat that question? | |
| 22 | BY MR. FLORES: | |
| 23 |     Q.   Sure.  Let me clarify my question.  When | |
| 24 | you arrived on-scene, did you learn any information | |
| 25 | of any activities or anything Mr. Lopez had done | 10:55:06 |

| | | |
|---|---|---|
| 1 | prior to you arriving there? | 10:55:11 |
| 2 |     A.   Yes, sir.  While we were en route to the | |
| 3 | scene, a separate -- additional radio call came out | |
| 4 | that Mr. Lopez was running down the streets like | |
| 5 | attempting to cut people with the knife. | 10:55:24 |
| 6 |     Q.   When you got on-scene, did you see anyone | |
| 7 | approach any officers who -- of anyone who allegedly | |
| 8 | was threatened by Mr. Lopez? | |
| 9 |     A.   Did I meet with anyone that was threatened | |
| 10 | by him?  Was that -- | 10:55:51 |
| 11 |     Q.   Yes.  When -- when you arrived on-scene, | |
| 12 | did you see anyone approach any of the officers that | |
| 13 | were there and said, Hey, I was one of the | |
| 14 | individuals that was threatened by Mr. Lopez with a | |
| 15 | knife? | 10:56:03 |
| 16 |     A.   No, sir. | |
| 17 |     Q.   Did you ever see any individuals later on, | |
| 18 | either at the -- after lethal force or at any -- at | |
| 19 | any point, approach officers and say, I was one of | |
| 20 | the individuals that was threatened by Mr. Lopez? | 10:56:18 |
| 21 |     A.   No, sir. | |
| 22 |     Q.   As far as you know, were -- did any of | |
| 23 | those individuals that were allegedly threatened by | |
| 24 | Mr. Lopez before police officers arrived by -- | |
| 25 | on-scene, did anyone ever learn who they were? | 10:56:40 |

| | | |
|---|---|---|
| 1 | your position, were you able to see any signs that | 11:17:17 |
| 2 | Mr. Lopez had, in fact, attempted to hurt himself, | |
| 3 | cut himself? | |
| 4 |     A.   Yeah.  Like, I saw him put the knife to | |
| 5 | his neck and his hand and move it in a sawing | 11:17:30 |
| 6 | motion. | |
| 7 |     Q.   Was he -- did you see any bleeding, any | |
| 8 | cuts on him? | |
| 9 |     A.   No, sir. | |
| 10 |     Q.   So as far as you could tell from your | 11:17:45 |
| 11 | position, even though he was doing the cutting or | |
| 12 | sawing motion on himself, did you, in fact, see if | |
| 13 | he, in fact, cut himself? | |
| 14 |     A.   No, sir, I did not. | |
| 15 |     Q.   And -- and prior to this call with | 11:18:01 |
| 16 | Mr. Lopez, had you ever shown up to this particular | |
| 17 | location and had any interactions with Mr. Lopez? | |
| 18 |     A.   No, sir. | |
| 19 |     Q.   Were you aware of any other officers there | |
| 20 | on-scene being called to that location and having an | 11:18:16 |
| 21 | interaction with Mr. Lopez? | |
| 22 |     A.   Not that I'm aware, sir. | |
| 23 |     Q.   Later -- at any point afterwards, were you | |
| 24 | aware -- did you learn of earlier calls from -- to | |
| 25 | that location and officers having interactions with | 11:18:36 |

| | | |
|---|---|---|
| 1 | Q. Okay. How soon after Mr. Lopez sat down | 11:24:03 |
| 2 | did he stand up again? | |
| 3 | MS. LAWRENCE: Asked and answered. | |
| 4 | THE WITNESS: Another ten minutes or so. | |
| 5 | Five or ten minutes. | 11:24:32 |
| 6 | MS. LAWRENCE: I'm not sure I understand | |
| 7 | the question, then. I think you had said 30 seconds | |
| 8 | from the time he stood up to sat down. Is this a | |
| 9 | different question or the same? I'm confused. | |
| 10 | MR. FLORES: It was a different question. | 11:24:44 |
| 11 | I wanted to learn how long after he sat down again | |
| 12 | did he stand up. | |
| 13 | MS. LAWRENCE: Okay. I understand. | |
| 14 | BY MR. FLORES: | |
| 15 | Q. And the estimate you gave us, Officer, was | 11:24:54 |
| 16 | five to ten minutes; is that -- is that still your | |
| 17 | estimate? | |
| 18 | A. Yes, sir. | |
| 19 | Q. And when he stood up the second time, what | |
| 20 | did you observe Mr. Lopez do? | 11:25:06 |
| 21 | A. Before he stood up, he made the cross with | |
| 22 | his hands, stood up, raised his right hand with a | |
| 23 | knife -- with the blade pointing in our direction, | |
| 24 | walked down the steps, and began to approach my | |
| 25 | partner officers. | 11:25:28 |

| | | |
|---|---|---|
| 1 | did, in fact, hit -- hit him? | 11:29:01 |
| 2 | A.  I never saw any bruising.  He had a shirt | |
| 3 | on, sir. | |
| 4 | Q.  Well, was -- at some point after the | |
| 5 | shooting, there was CPR, first aid administered to | 11:29:12 |
| 6 | Mr. Lopez; is that right? | |
| 7 | A.  Yes, sir. | |
| 8 | Q.  Paramedics removed his shirt? | |
| 9 | A.  I didn't personally see it.  I was dealing | |
| 10 | with the family at that point, so I didn't see what | 11:29:28 |
| 11 | happened with the medics. | |
| 12 | Q.  When you discharged your weapon, was it a | |
| 13 | response to a command that you were given? | |
| 14 | MS. LAWRENCE:  Asked and answered. | |
| 15 | THE WITNESS:  No.  It was because he was | 11:29:49 |
| 16 | approaching my partner officers with a knife in his | |
| 17 | hand after he made a praying gesture and all the | |
| 18 | other movements he was doing before, like cutting | |
| 19 | his own neck and hand. | |
| 20 | BY MR. FLORES: | 11:30:07 |
| 21 | Q.  Who discharged -- well, let me start over. | |
| 22 | Did you hear any other officers discharge | |
| 23 | their weapons prior to yours discharging? | |
| 24 | A.  No, sir. | |
| 25 | Q.  Do you know if you discharged your weapon | 11:30:45 |

| | | |
|---|---|---|
| 1 | the time you arrived on the scene with Mr. Lopez to | 12:31:12 |
| 2 | the time lethal force was used, Mr. Lopez remained | |
| 3 | to that part of the stairs?  In other words, he | |
| 4 | didn't go to no other locations? | |
| 5 |      A.   Yes.  He remained at the steps, yes. | 12:31:31 |
| 6 |      Q.   Okay.  And during your time with Mr. Lopez | |
| 7 | there at that incident, did you ever see Mr. Lopez | |
| 8 | exhibit -- how should I describe this -- exaggerated | |
| 9 | behavior?  For example, at any point was he jumping | |
| 10 | up and down, waving his arms, running up and down | 12:32:04 |
| 11 | the stairs, anything like that? | |
| 12 |           MR. FORD:  Well, the question is vague and | |
| 13 | ambiguous. | |
| 14 |           But go ahead and answer. | |
| 15 |           THE WITNESS:  He was -- held a knife to | 12:32:16 |
| 16 | his neck and sawing it back and forth, and then he | |
| 17 | put it to his hand and was sawing it back and forth. | |
| 18 | BY MR. FLORES: | |
| 19 |      Q.   Other than those gestures, I just want to | |
| 20 | know physical in terms of movement, did you ever see | 12:32:27 |
| 21 | him make any exaggerated physical gestures in terms | |
| 22 | of him running up and down the stairs, jumping up | |
| 23 | and down, make sudden movements? | |
| 24 |      A.   No, sir.  He wasn't, like, moving around | |
| 25 | the steps except for when he walked down the steps. | 12:32:48 |

COURT REPORTERS/VIDEOGRAPHERS/INTERPRETERS

```
 1         I, SUZANNE SCHELLER, CSR No. 12652, a Certified
 2   Shorthand Reporter for the County of Riverside, State of
 3   California, do hereby certify;
 4         That prior to being examined, the witness named
 5   in the foregoing deposition, was by me duly sworn to
 6   testify the truth, the whole truth, and nothing but the
 7   truth;
 8         That said deposition was taken before me at
 9   the time and place herein set forth, and was taken by me
10   in shorthand and thereafter transcribed into typewriting
11   under my direction and supervision, and I hereby certify
12   that the said deposition is a full, true and correct
13   transcription of my shorthand notes so taken;
14         (X) Reading and signing was requested.
15         ( ) Reading and signing was waived.
16         ( ) Reading and signing was not requested.
17         I further certify that I am neither counsel
18   for nor related to any party to said action, nor in any
19   way interested in the outcome thereof.
20         IN WITNESS WHEREOF, I hereunto subscribe my
21   name this 3rd day of October, 2023.
22
23                    _____
                      Certified Shorthand Reporter in
24                    and for the County of Riverside,
                             State of California
25
```

JONNELL AGNEW & ASSOCIATES
(800) 524-DEPO