# EXHIBIT D

CERTIFIED TRANSCRIPT

# LOPEZ

VS.

# CITY OF LOS ANGELES, ET AL

---

# JOSE JAIME

*September 20, 2023*

---



**JONNELL AGNEW & ASSOCIATES**
(800) 524-DEPO

COURT REPORTERS/VIDEOGRAPHERS/INTERPRETERS

```
 1                UNITED STATES DISTRICT COURT
 2                CENTRAL DISTRICT OF CALIFORNIA
 3
 4   MARGARITO T. LOPEZ, SONIA           )
     TORRES, KENI LOPEZ, ROSY LOPEZ,     )
 5                                       )
                  Plaintiffs,            )
 6                                       )
           vs.                           ) No. 2:22-CV-07534-
 7                                       )    FLA-MAA
     CITY OF LOS ANGELES, JOSE           )
 8   ZAVALA, JULIO QUINTANILLA, AND      )
     DOES 1 THROUGH 10, INCLUSIVE,       )
 9                                       )
                  Defendants.            )
10   _____)
```

CERTIFIED TRANSCRIPT

Videotaped deposition of JOSE JAIME, a witness, taken on behalf of the Plaintiffs, before Suzanne Scheller, CSR No. 12652, commencing on Wednesday, September 20, 2023, at 1:03 p.m., taken via Zoom, pursuant to Notice of Taking Deposition.

| | | |
|---|---|---|
| 1 | Q.   And -- and in relation to Mr. Lopez, where | 13:39:41 |
| 2 | was Mr. Zavala's location? | |
| 3 | A.   Officer Zavala was in front of Mr. Lopez. | |
| 4 | So if Mr. Lopez were to be looking at | |
| 5 | Officer Zavala, I would say it would be in a | 13:40:02 |
| 6 | northwestern direction and that was probably | |
| 7 | anywhere from 15 to 20 feet, I would say, | |
| 8 | approximately. | |
| 9 | Q.   And where was -- where were you in relation | |
| 10 | to Officer Zavala at that point? | 13:40:26 |
| 11 | A.   I would say approximately 2 feet to his | |
| 12 | left side. | |
| 13 | Q.   Were you physically behind the door of the | |
| 14 | police car like Officer Zavala? | |
| 15 | A.   At some point I was. | 13:40:51 |
| 16 | Q.   In other words, you still had cover of the | |
| 17 | police door in the -- in that second position; is | |
| 18 | that correct? | |
| 19 | A.   Yes. | |
| 20 | Q.   When you went over to the call initially | 13:41:10 |
| 21 | from wherever you were, did you get any information | |
| 22 | regarding the nature of the call? | |
| 23 | A.   Yes. | |
| 24 | Q.   What information did you receive? | |
| 25 | A.   While listening to the radio, I heard that | 13:41:25 |

|    |                                                                                  |          |
|----|----------------------------------------------------------------------------------|----------|
| 1  | there was a man with a knife that was running. And                               | 13:41:27 |
| 2  | then it was upgraded. As I heard, that my partners,                              |          |
| 3  | Officer Zavalas and Officer Quintanilla, were                                    |          |
| 4  | responding to that -- to that radio call, I heard                                |          |
| 5  | that it was upgraded, meaning that it had become                                 | 13:41:43 |
| 6  | more severe, and I heard that there was a man                                    |          |
| 7  | chasing people with a knife.                                                     |          |
| 8  |     Q.  On your way to the call or when you first            |          |
| 9  | heard about the call, did you ever get information                               |          |
| 10 | that the person was threatening suicide or having                                | 13:42:09 |
| 11 | some mental health crisis?                                                       |          |
| 12 |     A.  I don't recall.                                      |          |
| 13 |     Q.  At any point when you were on-scene of the           |          |
| 14 | location, that is from the time you arrive to the                                |          |
| 15 | time you -- whatever time you left, that location                                | 13:42:25 |
| 16 | that the scene was cleared, did you see any                                      |          |
| 17 | individuals that were -- that came forward and said,                             |          |
| 18 | I was one of the individuals that was threatened with                            |          |
| 19 | a knife?                                                                         |          |
| 20 |     A.  No, sir.  I was escorted away.                       | 13:42:44 |
| 21 |     Q.  Did you ever hear of any individuals coming          |          |
| 22 | forward that allegedly claimed that were threatened                              |          |
| 23 | by Mr. Lopez before officers arrive?                                             |          |
| 24 |     A.  I -- personally, I didn't, but I'm sure              |          |
| 25 | the force investigation division met with those he                               | 13:43:01 |

COURT REPORTERS/VIDEOGRAPHERS/INTERPRETERS

| | | |
|---|---|---|
| 1 | himself, where was Mr. Lopez at that point? | 14:11:50 |
| 2 | A.   He was sitting on the -- on the front | |
| 3 | steps to the apartment building. | |
| 4 | Q.   At some point afterwards he got up, | |
| 5 | Mr. Lopez? | 14:12:10 |
| 6 | A.   Yes. | |
| 7 | Q.   How -- how soon after that did he get up? | |
| 8 | A.   I do not recall. | |
| 9 | Q.   Are you able to give us your best estimate? | |
| 10 | A.   I would probably be wrong.  I -- I can't | 14:12:28 |
| 11 | really say. | |
| 12 | Q.   At some point Mr. Lopez came down the | |
| 13 | stairs.  Would you say -- would you say -- would you | |
| 14 | say that was fair? | |
| 15 | A.   Yes. | 14:12:49 |
| 16 | Q.   When he came down the stairs, how would you | |
| 17 | describe his movement down the stairs? | |
| 18 | A.   He -- he appeared -- he appeared | |
| 19 | committed.  However, it wasn't fast at the time. | |
| 20 | Q.   You say "it wasn't fast."  What do you mean | 14:13:19 |
| 21 | by that? | |
| 22 | A.   Meaning that when he stood up, it wasn't | |
| 23 | abrupt, but -- but he seemed decisive in what -- in | |
| 24 | what he was doing. | |
| 25 | Q.   What makes you say that he was "decisive"? | 14:13:37 |

COURT REPORTERS/VIDEOGRAPHERS/INTERPRETERS

| | | |
|---|---|---|
| 1 | A.  I would say he was decisive because, as I | 14:13:44 |
| 2 | was observing him sitting on the steps, he -- he | |
| 3 | looked like he was having an internal struggle.  He | |
| 4 | was shaking his head.  He was crying, sweating | |
| 5 | profusely.  He was murmuring, mumbling something. | 14:14:00 |
| 6 | He had the knife up to his neck, and, to me, I | |
| 7 | thought -- I believed that he was going to charge | |
| 8 | officers eventually. | |
| 9 | Q.  Prior to the seconds where lethal force was | |
| 10 | used, had -- had he made any gestures of charging at | 14:14:27 |
| 11 | officers? | |
| 12 | A.  He walked towards -- initially towards one | |
| 13 | of the police vehicles and the officers. | |
| 14 | Q.  All right.  So he gets up.  Can you | |
| 15 | describe Mr. Lopez's movements next? | 14:14:54 |
| 16 | A.  Yes.  He -- he walks, I would say, in -- | |
| 17 | in a northeastern direction, as I said, towards the | |
| 18 | officers.  You know, one foot in front of the other. | |
| 19 | Cleaver's still in his right hand.  You -- you can | |
| 20 | tell his muscles are tense in his right forearm, and | 14:15:18 |
| 21 | then he starts to pivot, and it looks like he's | |
| 22 | looking in our direction where myself and | |
| 23 | Officer Zavala are. | |
| 24 | Q.  And when he allegedly looked in your | |
| 25 | direction, was there any body movement allegedly with | 14:15:41 |

COURT REPORTERS/VIDEOGRAPHERS/INTERPRETERS

| | | |
|---|---|---|
| 1 | you were about to shoot or discharge your weapon. | 14:24:39 |
| 2 | That moment where you were about to discharge your | |
| 3 | weapon, why did you believe you needed to discharge | |
| 4 | it? | |
| 5 |     A.   I perceived Mr. Lopez as a serious threat. | 14:24:55 |
| 6 |     Q.   Why did you believe Mr. Lopez to be a | |
| 7 | threat? | |
| 8 |     A.   Well, I base it on the whole totality of | |
| 9 | the whole incident, given that we had been given | |
| 10 | information that he was armed with a large knife, | 14:25:15 |
| 11 | which could cause serious bodily injury, and the | |
| 12 | fact that he was running after people posing a | |
| 13 | threat to members of the community, the fact that he | |
| 14 | never let go of that cleaver while he was sitting or | |
| 15 | standing, the fact that he was discharged with | 14:25:31 |
| 16 | 40-millimeter, and it was ineffective as far as him | |
| 17 | releasing said weapon.  And then the fact that he | |
| 18 | made a decision to walk towards officers with an | |
| 19 | edge weapon, despite having officers tell him to | |
| 20 | drop -- or give him commands to drop and urge him to | 14:25:57 |
| 21 | drop the weapon and disarm himself.  I thought he | |
| 22 | was a serious threat, and I believed he was going to | |
| 23 | attempt to force us into -- into firing our weapons | |
| 24 | at him. | |
| 25 |     Q.   If you believed you -- that you could | 14:26:20 |

COURT REPORTERS/VIDEOGRAPHERS/INTERPRETERS

```
 1         I, SUZANNE SCHELLER, CSR No. 12652, a Certified
 2   Shorthand Reporter for the County of Riverside, State of
 3   California, do hereby certify;
 4         That prior to being examined, the witness named
 5   in the foregoing deposition, was by me duly sworn to
 6   testify the truth, the whole truth, and nothing but the
 7   truth;
 8         That said deposition was taken before me at
 9   the time and place herein set forth, and was taken by me
10   in shorthand and thereafter transcribed into typewriting
11   under my direction and supervision, and I hereby certify
12   that the said deposition is a full, true and correct
13   transcription of my shorthand notes so taken;
14         (X) Reading and signing was requested.
15         ( ) Reading and signing was waived.
16         ( ) Reading and signing was not requested.
17         I further certify that I am neither counsel
18   for nor related to any party to said action, nor in any
19   way interested in the outcome thereof.
20         IN WITNESS WHEREOF, I hereunto subscribe my
21   name this 3rd day of October, 2023.
22
23   _____
          Certified Shorthand Reporter in
24        and for the County of Riverside,
              State of California
25
```

JONNELL AGNEW & ASSOCIATES
(800) 524-DEPO