CARRILLO LAW FIRM, LLP
Luis A. Carrillo (Bar No. 70398)
Michael S. Carrillo (Bar No. 258878)
1499 Huntington Drive, Suite 402
 South Pasadena, CA 91030
Tel: (626) 799-9375
Fax: (626) 799-9380

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo (Bar No. 144074)
dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARITO T. LOPEZ individually and as successor in interest to Margarito E. Lopez, Deceased; SONIA TORRES, KENI LOPEZ, and ROSY LOPEZ, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES; JOSE ZAVALA; JULIO QUINTANILLA; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:22-cv-07534-FLA-MAAx<br><br>Hon. Judge Fernando L. Aenlle-Rocha<br>Hon. Mag. Maria A. Audero<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4 TO LIMIT TESTIMONY OF PLAINTIFFS' EXPERT BENNET OMALU, M.D.**<br><br>FPTC:        May 31, 2024<br>Trial:        July 16, 2024 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4 TO LIMIT TESTIMONY
OF PLAINTIFFS' EXPERT BENNET OMALU, M.D.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This civil rights and state tort case arises out of the shooting of Mr. Margarito E. Lopez ("Mr. Lopez" or "decedent") by Los Angeles Police Department Officers, defendants Jose Zavala and Julio Quintanilla ("defendant officers"), on December 18, 2021. By way of their fourth motion *in limine*, Defendants seek to limit Plaintiffs' retained expert, Dr. Bennet Omalu from testifying as to the bullet wound trajectories, the chemical pain and suffering decedent experienced prior to his death, and as to the facts of the case on the bases that these opinions are cumulative, speculative, outside the scope of Dr. Omalu's areas of expertise, and invade the province of the jury. Dr. Omalu's testimony on the trajectories and the chemical pain and suffering Mr. Lopez experienced prior to his death including when Mr. Lopez was in a deep coma are relevant, reliable, and have been properly admitted by courts in this District and across the country. These opinions are not cumulative, as no other witness is offering these opinions. Plaintiffs oppose the motion and request the Court to deny Defendants' motion in its entirety.

## II.  LEGAL STANDARD

The gatekeeping requirement of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) is to ensure the reliability and relevancy of expert testimony; "it is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The Court must assess (1) the expert's qualification to present the opinions offered, (2) "whether the reasoning or methodology underlying the testimony is scientifically valid," and (3) "whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. The focus of this inquiry "must be solely on principles and

-1-  Case No. 2:22-cv-07534-FLA-MAAx

methodology, not on the conclusions they generate." *Id.* at 595. In analyzing whether specific testimony was admissible, such testimony must be both relevant (helpful to the jury) and reliable. *Daubert*, 509 U.S. at 589, 591-92. This gatekeeper function applies to all expert testimony, not just testimony based in science. *Kumho*, 526 U.S. at 138.

Additionally, in order to assess the expert's qualification to present the opinions offered, the Court looks to Federal Rules of Civil Procedure, Rules 702 and 703. *Daubert*, 509 U.S. at 592.

Federal Rules of Evidence, Rule 702, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Federal Rules of Evidence, Rule 703, provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

While expert opinions must be reliable, a trial judge has the discretion "both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises." *Kumho*, 526 U.S. at 152. Defendants cannot use this standard to exclude an expert's opinions just because they disagree with the expert or the expert's opinions are unfavorable to their position. *See Feliciano-Hill v. Principi*, 439 F.3d 18, 25 (1st Cir. 2006) ("The mere fact that two experts disagree is not grounds for excluding one's

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4 TO LIMIT TESTIMONY
OF PLAINTIFFS' EXPERT BENNET OMALU, M.D.

testimony."); *Bonner v. ISP Technologies, Inc.*, 259 F. 3d 924, 930 (8th Cir. 2001) ("Although it is common that medical experts often disagree on diagnosis and causation, questions of conflicting evidence must be left for the jury's determination."); *In re Viagra Products Liability Litigation*, 572 F. Supp. 2d 1071, 1078 (D. Minn. 2008) ("only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded."). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595; *see also Humetrix v. Gemplus*, 268 F.3d 910, 919 (9th Cir. 2001) (Defendants' "recourse is not exclusion of the testimony, but, rather, refutation of it by cross-examination and by the testimony of [their] own expert witnesses.").

## III.   ARGUMENT

### A. Dr. Omalu's Testimony is Not Cumulative.

Defendants first seek to exclude Dr. Omalu's testimony on the basis that it is cumulative, though do not identify what evidence it is cumulative with. Defendants seem to argue that because Plaintiffs designated several non-retained experts with medical backgrounds in their Rule 26 Expert Disclosures, Plaintiffs' retained expert, Dr. Omalu's designation is cumulative. This argument lacks merit. First, Dr. Omalu's opinions, outlined in his Rule 26 Report, concern the trajectories of the bullets in Mr. Lopez's body and in relation to the defendant officers as well as Mr. Lopez's pre-death pain and suffering. His opinions are more detailed and include more subjects than what is contained in the autopsy report prepared by medical examiner, Dr. Hunt. Second, no other designated expert has proffered such testimony and defendants did not designate any rebuttal expert. Additionally, Dr. Omalu is qualified to testify as to both aforementioned subject matters, and both areas are highly relevant to liability and damages in this case.

-3-                    Case No. 2:22-cv-07534-FLA-MAAx

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4 TO LIMIT TESTIMONY OF PLAINTIFFS' EXPERT BENNET OMALU, M.D.

**B. Dr. Omalu is Qualified to Testify as to the Bullet Wound Trajectories.**

Contrary to Defendants' assertions, Dr. Omalu does not need to be a ballistics expert to testify about bullet trajectories. As a forensic pathologist who has conducted hundreds of autopsies involving gunshot wounds and testified in court as an expert in trajectories numerous times, Dr. Omalu is more than qualified to testify as to the direction and manner in which the bullet traveled through Mr. Lopez's body, and the relative body positioning of Zavala, Quintanilla, and Mr. Lopez at the time of the shooting. Federal Rules of Evidence, Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. See *Kumho*, 526 U.S. at 1178 ("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). Dr. Omalu is well-qualified, relies on sound medical conclusions, and possesses the requisite specialized knowledge and training to assist the trier of fact in determining Mr. Lopez's body position at the time of each shot, the bullet trajectories, and his pre-death pain and suffering. His proffered testimony is therefore admissible.

Dr. Omalu has sufficient expertise to opine on these subject matters, as reflected in Dr. Omalu's description of his experience and background. (See "Exhibit C," ("Omalu Report") at 1, Dkt. No. 59-2). Dr. Omalu was San Joaquin County's chief medical examiner for over a decade and is board certified in anatomic pathology and forensic pathology, as well as clinical pathology and neuropathology. (Omalu Report, at 1-2). Dr. Omalu has been involved in over ten thousand death and injury investigations in his career as a forensic pathologist and neuropathologist, which began in 1999. (Omalu Report, at 2). Dr. Omalu has personally conducted and performed over nine thousand autopsies and death investigations and examined over ten thousand brain tissue specimens. (Omalu Report, at 2). Dr. Omalu has been consulted and retained as an expert witness in one to two thousand cases involving all types of medico-legal cases across all jurisdictions in the United States including federal, state, county and

municipal courts and arbitration panels; in both civil and criminal cases, for the plaintiff, defense, district attorneys and public defenders. (Omalu Report, at 2). Since 1999, Dr. Omalu has testified as an expert witness in matters relating to all types of injuries and deaths in several hundred court proceedings across the United States. (Omalu Report, at 2). Moreover, Dr. Omalu may use many types of evidence – including but not limited to the autopsy report, medical evidence, physical evidence, and forensic evidence – to form the basis for these opinions. He has reviewed the materials in this case, delineated the scientific bases for his opinions, and expressed his opinions to a reasonable degree of scientific and medical certainty.

In addition, past courts, including courts in the Central District have permitted Dr. Omalu's testimony on bullet trajectory, given his extensive experience in examining gunshot wounds and bullet trajectories. See *Murillo v. City of Los Angeles,* No. CV218738FMOAGRX, 2023 WL 9420539 at * 2-3 (C.D. Cal. Aug. 21, 2023) (finding that Dr. Omalu's experience as a forensic pathologist qualifies him to testify at trial on the trajectory and manner in which bullets enter and exit the body); See also, *Barillas v. City of Los Angeles*, CV1808740CJCASX, 2021 WL 4434977, at *13 (C.D. Cal. Apr. 12, 2021) (holding Dr. Omalu's experience in conducting autopsies qualifies him to testify on bullet trajectory based on the nature of the decedent's wounds and the path the bullets took through his body); see also, *People v. Cardenas*, C069229, 2018 WL 3031930, at *3 (Cal. App. 3d Dist. June 19, 2018) (admitting Dr. Omalu's testimony on body positioning and bullet trajectory). Moreover, other courts have found that experts with similar backgrounds and expertise as Dr. Omalu are qualified to opine on bullet trajectories. *Taylor v. Shields,* 2017 WL2633427, *10 (E.D. Pa. 2017), ("Dr. Arden's medical background qualified him to opine as to the trajectory of the bullet inside the human body and his training as a forensic pathologist, along with his extensive experience with gunshot cases, qualified him to opine as to the path of the bullet trajectory.").

Relying on the bullet trajectory described in Brice Hunt's, M.D. autopsy report, the autopsy photographs, medical records, defendants' deposition testimony, and body-worn video camera footage, Dr. Omalu offers his additional opinions regarding the trajectories of the bullets and Mr. Lopez's body position in relation to the officers' positions.[1] (Omalu Report at 7-10). These opinions are not mere cumulative recitations of the autopsy report, but provide additional context, including the "bullet wound characteristics," whether soot or other ballistic materials were present at the site of the wounds, "eccentric accentuation" at the wounds, and how these factors inform his analysis of the bullet trajectories. (Omalu Report at 8). This analysis and opinion are helpful for the trier of fact and based on reliable scientific principles. Dr. Omalu is qualified to opine on the internal *and* external trajectories of the bullet wounds, and should not be limited to only opining on the internal trajectories. His full opinions should therefore be admitted.

Moreover, this expert testimony is highly relevant to the central question in this case: whether the officers' use of deadly force was excessive and unreasonable. Bullet trajectory, the decedent's position in relation to the officers' positions is relevant and helpful to the fact finder's evaluation of the use of force in this case, and is beyond what is included in Dr. Hunt's autopsy report. For example, Dr. Omalu opines that for two of the three gunshot wounds, given the trajectories, it is "less likely that Mr. Lopez was advancing and charging at the officer when he was shot by the officer." (Omalu Report at 9, 10). For example for the gunshot wound identified as #2, which possessed lethal capacity, Dr. Omalu basis his opinion on the characteristics of the abrasion around the wound, the direction of the trajectory, ("backward," "downward," and "leftward,"), which indicated that Mr. Lopez "was not facing the officer that fired the officer and the gun when he was shot," and that "it is very much less likely that Mr. Lopez was shot while he was standing erect on his feet, facing the officer who

---

[1] Contrary to Defendants' argument (Dkt. No. 59 at 8), Dr. Omalu does not offer an opinion in his report regarding the sequence of the shots.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4 TO LIMIT TESTIMONY
OF PLAINTIFFS' EXPERT BENNET OMALU, M.D.

shot him, or advancing and charging at the officer who shot him." (Omalu Report, at 9).

To the extent that Defendants take issue with Dr. Omalu's reference to the facts of this case in his report or deposition testimony, such concerns are without merit. "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed," which includes review of the evidence in the record. See Fed. R. Evid., 703. Defendant's argument to the contrary fails. "Experts may interpret and analyze factual evidence, but may not testify about the law." *S.E.C. v. Capital Consultations, LLC,* 397 F.3d 733; 749 (9th Cir. 2005) (citing *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996). Reviewing body-worn camera footage to assess its consistency with the other materials reviewed is common sense and clearly within Dr. Omalu's expertise. Dr. Omalu's bullet trajectory opinions are not speculative, inflammatory, or argumentative as Defendants argue, as Dr. Omalu relies on medical and forensic evidence to form his opinions as well. It is not improper for Dr. Omalu to provide an opinion on Mr. Lopez's body positioning at the time he was shot, rather it is well-within the purview of his expertise as a medical forensic expert.

**C. Dr. Omalu is Qualified to Testify as to Decedent's Unconscious and Conscious Pain and Suffering, Which is Relevant to Plaintiffs' Damages.**

Defendants also seek to exclude Dr. Omalu's opinions regarding decedent's conscious and unconscious pain and suffering, deep coma, and chemical pain and suffering on the basis that these opinions are irrelevant and speculative. Defendants' argument that unconscious pain and suffering is speculative only illustrates the importance of this testimony. See *United States v. Cazares*, 788 F.3d 956, 977 (9th Cir. 2015) ("Experts may be used to testify to matters outside the expected knowledge of the average juror."); See also *Patterson v. City of Perth Amboy*, 2007 WL 3054939, *2 (D.N.J. 2007) ("Given the severity of the injuries [ ], the Court finds that a lay person would need expert testimony to understand the extent of [decedent]'s pain and

-7-   Case No. 2:22-cv-07534-FLA-MAAx

suffering from the time he was shot until the time he died."). In order to recover for a decedent's pre-death pain and suffering, Plaintiff must show "that the decedent was conscious for at least some period of time after he suffered the injuries which resulted in his death." *F/V Carolyn Jean, Inc. v. Schmitt*, 73 F.3d 884, 885 (9th Cir. 1995), quoting *Cook v. Ross Island Sand & Gavel Co.*, 626 F.2d 746, 749-750. Though not necessary, expert testimony about a decedent's pre-death pain and suffering can be very helpful for the jury to understand the nature and extent of the decedent's pain before they are pronounced dead. *Id.*

Moreover, courts have repeatedly recognized Dr. Omalu's ability and qualifications to testify regarding a decedent's conscious and unconscious pain and suffering. See *Murillo,* No. CV218738FMOAGRX, 2023 WL 9420539 at * 2-3 (finding Dr. Omalu's opinions on decedents' unconscious pain relevant to Plaintiffs' claims for pre-death pain and suffering damages, helpful to the jury, and reliable.); See also *A.B. v. Cnty. of San Diego*, No. 18CV1541-MMA-LL, 2020 WL 4430971 (S.D. Cal. July 31, 2020) (Same). In his expert report, Dr. Omalu dedicates nearly two pages to explaining the "patho-physiology of pain and suffering," explaining that a person can experience both mechanical and "chemical" pain and suffering, and explains the difference between the two. As Dr. Omalu explains, "Mechanical pain" which can result from "tissue damage by blunt force trauma and bullets elicits both fast and slow pain times." (Omalu Report at 11). Dr. Omalu goes on to explain that this tissue damage causes "biochemical tissue reactants like bradykinin, serotonin, histamine, prostaglandins, leukotrienes, potassium ions…" which the body releases, causing "sustained secondary chemical pain in addition to the primary fast pain directly caused by mechanical tissue damage." (Omalu Report at 11).

The substance of Dr. Omalu's opinion that Defendants seek to exclude – "chemical pain" – is an important and helpful explanation for the jury to understand the complexities of how a person can experience pain. Moreover, Dr. Omalu provides

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4 TO LIMIT TESTIMONY
OF PLAINTIFFS' EXPERT BENNET OMALU, M.D.

1  extensive information, based in reliable and generally accepted principals of medicine

2  to form the opinions that Mr. Lopez experienced "chemical pain," in addition to

3  "mechanical pain." Defendants' contention with Dr. Omalu's opinions regarding

4  chemical pain are properly addressed on cross examination, not by completely

5  excluding a relevant, principled, and helpful subject of expert testimony.

6      While lay people may understand the basic concept of a person experiencing pain

7  after being shot, they cannot be expected to understand the underlying mechanics,

8  chemistry, or severity of the pain and suffering, or how long that pain and suffering

9  lasts after a person is shot. For instance, Dr. Omalu points out that, although Mr. Lopez

10 had been shot, Mr. Lopez's entire brain, subcortical ganglia, brainstem nuclei of the

11 cranial nerves all remained fully intact. Such "distinctive anatomy of [Mr. Lopez's]

12 injuries enabled him to continue to experience increasingly higher levels of somatic

13 pain and suffering, mental pain and suffering, chemical pain, and suffering." (Omalu

14 Report at 14). This is not something lay people would be expected to know. It is

15 supported by medical science to a reasonable degree of medical certainty. Dr. Omalu

16 should therefore be permitted to testify as to Mr. Lopez's pre-death pain and suffering,

17 including the varied types of pain, as such testimony is directly relevant to Plaintiff's

18 claims for pre-death pain and suffering damages.

19 **D. Dr. Omalu is Not Offering Police Practices Opinions.**

20     Defendants seek to exclude Dr. Omalu's responses to Defense counsel's questions

21 in his deposition that relate to police practices. Defendants had not raised this issue in

22 the parties' meet and confer efforts. Plaintiffs agree that Dr. Omalu is not offering

23 opinions on the use of force or police practices in this case. The comments that

24 Defendants seek to exclude are Dr. Omalu's responses to defense counsel's questions

25 eliciting testimony relevant to police practices, which plaintiffs' counsel objected to as

26 outside the deponent's scope of designation.

27     ///

28

### E. Dr. Omalu's Medical Background is Relevant to His Expertise.

Defendants seek to exclude evidence that Dr. Omalu was the subject of a Hollywood movie and of notoriety related to his Chronic Traumatic Encephalopathy ("CTE") research. However, the work that Dr. Omalu has done, and resulting recognition he has received, further supports Dr. Omalu's qualifications and ability to render these opinions. Dr. Omalu's expertise in head injuries is directly connected to his expertise as a medical-forensic coroner and thus his expertise, given the nature of this case. The recognitions also indicate that he is held in high regard within the medical community. Plaintiff's counsel does not intend to spend extensive time discussing these subjects but should be permitted to briefly touch upon them, just as Plaintiff's counsel has been permitted to do in other cases. Dr. Omalu's background is relevant to his expertise and opinions in this case.

## IV.   CONCLUSION

Plaintiffs respectfully request that this Court deny Defendants' motion in limine limit Dr. Bennet Omalu's testimony in its entirety.


Respectfully submitted,


Dated:  May 17, 2024                    LAW OFFICES OF DALE K. GALIPO
                                        CARRILLO LAW FIRM, LLP

                                        By:_____*/s/ Shannon J. Leap* _____
                                            Dale K. Galipo
                                            Renee V. Masongsong / Shannon J. Leap
                                            Michael S. Carrillo / J. Miguel Flores
                                            *Attorneys for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No. 2:22-cv-07534-FLA-MAAx
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4 TO LIMIT TESTIMONY
OF PLAINTIFFS' EXPERT BENNET OMALU, M.D.