LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, SBN 144074
dalekgalipo@yahoo.com
Renee V. Masongsong, SBN 281819
rvalentine@galipolaw.ocm
Shannon J. Leap, SBN 339574
sleap@galipolaw.ocm
21800 Burbank Blvd., Suite 310
Woodland Hills, California 91367
dalekgalipo@yahoo.com
Tel:   (818) 347-3333
Fax:   (818) 347-4118

CARRILLO LAW FIRM, LLP
Luis A. Carrillo (Bar No. 70398)
Michael S. Carrillo (Bar No. 258878)
1499 Huntington Drive, Suite 402
 South Pasadena, CA 91030
Tel: (626) 799-9375
Fax: (626) 799-9380

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARITO T. LOPEZ individually and as successor in interest to Margarito E. Lopez, Deceased; SONIA TORRES, KENI LOPEZ, and ROSY LOPEZ, individually,<br><br>              Plaintiffs,<br><br>        v.<br><br>CITY OF LOS ANGELES; JOSE ZAVALA; JULIO QUINTANILLA; and DOES 1-10, inclusive,<br><br>              Defendants. | Case No.: 2:22-cv-07534-FLA-MAAx<br><br>*Assigned to*:<br>Hon. Judge Fernando L. Aenlle-Rocha<br>Hon. Mag. Maria A. Audero<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO BIFURCATE LIABILITY FROM DAMAGES**<br><br>FPTC:        June 28, 2024<br>Trial:       July 16, 2024 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This Court should deny Defendants' untimely motion to bifurcate liability from damages ("Motion") because bifurcation would not further the ends of judicial economy and efficiency in this particular case.  In this case, the evidence regarding liability and damages is inextricably intertwined.  All four Plaintiffs witnessed the shooting of Margarito E. Lopez ("the decedent") and maintain claims for negligent infliction of emotional distress, in addition to Plaintiff Margarito T. Lopez's claims for excessive force, interference with familial relationship, battery, negligence, and violation of the Bane Act.  Plaintiffs seek compensatory damages for their emotional distress on their negligent infliction claim, and Plaintiff Margarito T. Lopez additionally seeks wrongful death damages and survival damages, including for the decedent's pre-death pain and suffering and loss of life.  At trial, each Plaintiff will testify about their observations of the incident and about damages.

In their Motion, Defendants propose bifurcating the trial into two phases—determination of liability and entitlement to punitive damages in the first phase, and the amount of compensatory and punitive damages in the second phase.  This would require calling each of the four Plaintiffs to the stand twice, first to discuss their observations of the incident during the liability phase of trial, and then again to discuss the damages during the second phase of trial.  Other witnesses, including Plaintiffs' expert Dr. Bennet Omalu, the responding paramedics, and the medical examiner, will also testify on issues relating to both liability and damages. In this case, liability and compensatory damages should be tried in a single phase, such that each witness would only be called to the stand once.  No party has designated any witness who would testify only as to damages. Defendants' request for a separate phase of trial would therefore be an unnecessarily inefficient and potentially duplicative and cumulative presentation of evidence and testimony.

/ / /

Specifically, Plaintiffs propose that the trial be conducted as follows: (1) Phase I—determination of liability, the amount of compensatory damages, and entitlement to punitive damages; (2) Phase II—the amount of punitive damages, if any. In this way, Defendants' financial circumstances would only be admitted during the determination of the amount of punitive damages. Defendants' Motion should also be denied because bifurcation of liability from damages would result in prejudice to Plaintiffs, whereas trying liability and damages in the same phase would not result in prejudice to Defendants. Bifurcating the determination of liability from compensatory damages creates a risk that jurors will return a defense verdict simply to avoid returning for a second phase of trial. Bifurcating liability from damages would also result in increased trial expenses for Plaintiffs in the form of additional fees for witnesses called during both phases of trial. Defendants' argument that trying liability and compensatory damages would prejudice Defendants is purely speculative. For these reasons and the reasons set forth below, this Court should deny Defendants' Motion.

## II.  **ARGUMENT**

### A. DEFENDANTS' MOTION IS UNTIMELY

As a threshold matter, this Court should deny Defendants' Motion on the grounds that it is untimely. Defendants have noticed their motion for a date that falls after the final pretrial conference. The last day to file motions was April 5, 2024. (Dkt. No. 27). The last day to file motions *in limine* was May 3, 2024, and each party was limited to five motions *in limine*. (Dkt. No. 27). Defendants filed five motions *in limine*. (Dkt. No. 56-60).

### B. DEFENDANTS HAVE NOT MET THEIR BURDEN OF DEMONSTRATING THAT BIFURCATION AT TRIAL IS WARRANTED BASED ON THE PARTICULAR FACTS AND CIRCUMSTANCES OF THE CASE.

The Court must exercise its discretion under Federal Rule of Evidence 42 based on the particular facts of the case before it and not bifurcate certain types of trials as

1   a matter of routine. *Clark v. I.R.S.,* 772 F. Supp. 2d 1265, 1269 (D. Haw. 2009); See
2   also Fed. R. Civ. P. 42 advisory committee's note (1966 Amendment)
3   ("[S]eparation of issues for trial is not to be routinely ordered[.]").  In making the
4   case-by-case determination whether to bifurcate, courts have been guided, not only
5   by concerns for judicial economy, but also by notions of fundamental fairness.
6   Bifurcation should be denied where one party would gain an unfair advantage over
7   the other as a result.  *See, e.g.*, *Est. of Hill by & through Grube v. NaphCare, Inc.*,
8   No. 2:20-CV-00410-MKD, 2022 WL 2177679 at * 2 (E.D. Wash. June 14, 2022)
9   (listing factors), See also *Kimberly-Clark Corp. v. James River Corp.*, 131 F.R.D.
10   607, 608-09 (N.D. Ga. 1989).

11       "A defendant seeking bifurcation has the burden of presenting evidence that a
12   separate trial is proper in light of the general principle that a single trial tends to
13   lessen the delay, expense and inconvenience to all parties."  *McCrae v. Pittsburgh
14   Corning Corp.*, 97 F.R.D. 490, 492 (D.C. Pa. 1983).  Generally, "the 'normal trial
15   procedure' in the Ninth Circuit is to try liability and damages together because 'the
16   evidence usually overlaps substantially.'" *Firetrace USA, LLC v. Jesclard*, No. CV
17   07-02001-PHX-ROS, 2011 WL 13183014, at *1 (D. Ariz. Feb. 15, 2011) (quoting
18   *Hangarter v. Provident Life & Accident Ins. Co*., 373 F.3d 998, 1021 (9th Cir.
19   2004)).  Bifurcation is inappropriate where the issues are so intertwined that
20   separating them would "tend to create confusion and uncertainty." *Clark,* 772 F.
21   Supp. 2d at 1269 (quoting *Miller v. Fairchild Indus., Inc*., 885 F.2d 498, 511 (9th
22   Cir.1989)).

23       Here, Defendants, as the moving party, bear the burden of demonstrating why
24   bifurcation of the action is appropriate. *Clark,* 772 F. Supp. 2d at 1269. Generalized
25   assertions will not suffice.  Defendants must make a detailed offer of proof which
26   indicates the need for bifurcation. *Simpson v. Pittsburgh Corning Corp*., 901 F.2d
27   277, 283 (2d Cir. 1990).  Defendants' Motion makes no such showing.  Because
28   Defendants have failed in this regard, their Motion should be denied.  Instead,

Defendants argue in conclusory fashion that the Court should bifurcate trial into two phases to (1) avoid unfair prejudice and confusion; and (2) promote judicial economy.  As explained below, neither of these justifications warrant bifurcation in this case.

### C. BIFURCATION OF LIABILITY AND DAMAGES WOULD BE INAPPROPRIATE IN THIS CASE AND FOSTER DELAY, CONFUSION AND INCONVENIENCE.

Bifurcation of liability and damages would be inappropriate in this case where witnesses and evidence are inextricably intertwined.  Bifurcation here would result in prejudice to the Plaintiffs, substantially increased costs, duplicative presentation of evidence and testimony at multiple trials, needless complication, and the wasteful utilization of jury time for separate trials.  Plaintiffs do not object to bifurcation of the determination of the amount of punitive damages into a separate phase, provided that the jury determines Plaintiffs' entitlement to punitive damages in the first phase of trial.  As indicated above, Plaintiffs propose that the trial be conducted as follows: (1) Phase I—determination of liability, the amount of compensatory damages, and entitlement to punitive damages; (2) Phase II—the amount of punitive damages, if any.

Factors to consider in ruling on a motion for bifurcation under Federal Rule of Evidence, 42(b) include: "(1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the severable issues require the testimony of different witnesses and different documentary proof; (3) whether the party opposing the severance will be prejudiced if it is granted; and (4) whether the party requesting the severance will be prejudiced if it is not granted." *Clark,* 772 F. Supp. 2d at 1269; *BD ex rel. Jean Doe v. DeBuono*, 193 F.R.D. 117 (S.D.N.Y. 2000); *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 370 (2d Cir.1988). These factors weigh in favor of denying Defendants' Motion in this case.

/ / /

### 1.  Liability on Plaintiffs' Claims for Negligent Infliction of Emotional Distress is Intertwined with Plaintiffs' Damages

First, the issues Defendants seek to try separately—determination of liability and compensatory damages—are not significantly different from one another.  The determination of the shooting officers' liability and the Plaintiffs' damages both deal with the same set of facts, witnesses, and evidence.  All four Plaintiffs in this case witnessed the shooting of Margarito E. Lopez, and all four Plaintiffs maintain a claim for negligent infliction of emotional distress.  In their Motion, Defendants argue that "there is a lack of interrelated evidence in this case." (Def. Mot. at 7:9). This is erroneous.  One element of Plaintiffs' claims for negligent infliction of emotional distress is that the Plaintiff suffered serious emotional distress.  In order for the jury to determine whether Defendants are liable on Plaintiffs' claims for negligent infliction of emotional distress, Plaintiffs will need to testify regarding their serious emotional distress in the liability phase of trial.  Three of the Plaintiffs—Rosy Lopez, Keni Lopez, and Sonia Torres—do not have any claim other than their claims for negligent infliction of emotional distress.  It would be inefficient, cumulative, and redundant to call the Plaintiffs to the stand during a second phase of trial to recapitulate their testimony regarding their damages stemming from witnessing the shooting of Margarito E. Lopez.

Additionally, Plaintiff Margarito T. Lopez seeks survival damages on his claims for excessive force under 42 U.S.C. 1983 and the Fourth Amendment, battery, negligence, and violation of the Bane Act.  A component of the survival damages is the decedent's pre-death pain and suffering.  At trial, the police officers and the Plaintiffs will testify with respect to their observations of the decedent before, during, and after the shooting, including their observations of the decedent's injuries caused by the shooting.  Additionally, Plaintiffs have retained Bennet Omalu, M.D., to opine on the trajectory of the gunshots, the characteristics of the gunshot wounds, the decedent's conduct at the time of the shots, the decedent's

1  conscious pain and suffering, and the decedent's injuries and cause and manner of

2  death.  Dr. Omalu's opinions are relevant to both liability and damages, and his

3  opinions are based on the same evidence, including the videos and the autopsy

4  report.  It would be inefficient to call Dr. Omalu to the stand twice.  Calling Dr.

5  Omalu to the stand twice would also result in prejudice to Plaintiffs, who would

6  incur significant additional costs to secure this expert's time testifying in two

7  separate phases of trial.

8        It is also anticipated that the responding paramedics will testify with respect

9  to the decedent's injuries and condition after the shooting, and that the medical

10  examiner will testify as to the decedent's injuries and cause and manner of death.

11  Testimony regarding the gunshot wounds sustained by the decedent and the medical

12  treatment provided to the decedent at the scene after the shooting is intertwined with

13  testimony regarding the number of shots fired, the trajectory of the gunshots, and the

14  timeline of the incident.  Given the significant overlap between liability and

15  damages in the testimony of these witnesses and Dr. Omalu, it would be inefficient

16  to bifurcate liability from compensatory damages in this case.

17        Even though the decision whether or not to bifurcate a trial generally is within

18  the trial court's discretion, the Ninth Circuit has not hesitated to reverse a decision

19  to bifurcate where either the claims or the evidence are intertwined.  For instance, in

20  *Miller v. Fairchild Industries, Inc.*, 885 F.2d 498, 511 (9th Cir. 1989), the Ninth

21  Circuit held that bifurcation of liability and damages in a case with claims for

22  negligent or intentional infliction of emotional distress would be improper, because

23  "liability is intertwined with the issue of damages . . ."  *Id.  See also United Airlines*

24  *v. Wiener*, 286 F.2d 302 (9th Cir. 1961).  Similarly, in *De Anda v. City of Long*

25  *Beach*, 7 F.3d 1418, 1421 (9th Cir. 1993), the Ninth Circuit found an abuse of

26  discretion where the trial court bifurcated claims against individual sheriff deputies

27  from claims against the sheriff and the municipality, because the sheriff's decisions

28  might have contributed to a violation of the plaintiffs' rights and a separate trial for

municipal liability "would likely be duplicative."  Likewise, in *Wiener*, the Court held that "issues of liability and damages, exemplary or normal, are not so distinct and separable that a separate trial of the damage issues may be had without injustice." 286 F.2d at 306.  As *Weiner*, *Miller* and *De Anda* demonstrate, careful attention to the plaintiffs' liability and damages theories, and to the testimony and evidence necessary to prove each claim, is important when considering bifurcating a single trial into two separate trials.

### 2.  Bifurcation Would Not Serve the Goals of Judicial Economy and Efficiency

Second, the purported "severable issues" do not require the testimony of different witnesses or different documentary proof.  In their Motion, Defendants argue that bifurcation would "save time of calling witnesses who would otherwise not be called to testify in the liability or damages phases." (Def. Mot. at 8:12-14).  However, neither Plaintiffs nor Defendants have designated any witness to testify solely as to damages.  This is not a case where the plaintiffs have retained a parade of expert witnesses to opine only on their damages, whose testimony would be moot if the jury determined that the defendants were not liable.  Any witness in this case who would testify as to damages would also testify as to liability.  As such, if liability and compensatory damages were severed into separate phases, then testimony would be duplicative, such that bifurcation would not serve the interests of judicial economy.  The breadth of resources necessary to conduct two separate trials will unnecessarily tie up the parties, the Court, and witnesses in additional trial time.  For example, bifurcating the trial would require the introduction of two separate jury instructions and two separate verdict forms and would place a much heavier burden on the Court's resources than having a single trial on both issues.

As indicated above, all four Plaintiffs will testify during the liability phase regarding their observations of the incident and their serious emotional distress that is an element of their negligent infliction claim.  Calling the Plaintiffs back to the

stand during a second phase of trial to further discuss their emotional distress would not save any time. Rather, it would save time to allow the Plaintiffs to provide any additional testimony regarding damages when they are already on the stand testifying about their observations of the incident, in support of their negligent infliction of emotional distress claims.

In addition to seeking survival damages and damages for his serious emotional distress, Plaintiff Margarito T. Lopez also seeks wrongful death damages on his claims for interference with familial relations under 42 U.S.C. 1983 and the Fourteenth Amendment, and also on his claims for battery and negligence. The other three Plaintiffs in this case do not seek survival or wrongful death damages. It would promote judicial economy to allow Plaintiffs to testify as to Margarito T. Lopez's loss of the decedent's love, affection, etc. (wrongful death damages) and Margarito E. Lopez's loss of life (survival damages) during the same phase of trial as the determination of liability, rather than conducting a second phase of trial to present testimony on these damages. The same applies to Dr. Omalu, the responding paramedics, and the medical examiner, whose testimony regarding the gunshots and the decedent's injuries and cause and manner of death is intertwined with the decedent's survival damages, including his pre-death pain and suffering.

### 3. Plaintiffs Will Suffer Prejudice if Liability is Bifurcated from Damages

Third, Defendants' Motion should be denied because Plaintiffs will be prejudiced if damages were bifurcated from liability. Bifurcation exerts pressure—conscious or unconscious—on jury psychology during the first phase of trial. In a bifurcated trial, a jury may realize (or it may even be suggested to them by counsel) that if they return a verdict for Defendants, then they will not have to come back to court for the second phase. In other words, bifurcation rewards jurors who return a defense verdict with an early release from jury duty, and punishes those who return a plaintiff's verdict by requiring them to stay for additional days of trial. For these

reasons, bifurcation of liability from damages poses an additional risk of prejudice to Plaintiffs.

Moreover, bifurcation would not reduce jury confusion, as Defendants argue, but rather enhance it, as jurors would be asked to determine Defendants' liability, but would not be allowed to determine the amount of damages to which Plaintiffs are entitled. It would leave jurors with a sense of emptiness which would defeat their role in the justice system. "A juror can neither fully participate in nor fairly resolve a trial when relevant information is withheld. If denied significant portions of the full story, the juror will not know what questions to ask." Jennifer M. Granholm & William J. Richards, *Bifurcated Justice: How Trial Splitting Devices Defeat the Jury's Role*, 26 U Tol. L. Rev. 505, 507 (1995). Additionally, bifurcation of the trial will increase the costs of litigation as Plaintiffs will be forced to conduct two trials, including by calling Dr. Omalu on two separate occasions. By increasing the time and expense of presenting this case to the jury, bifurcation would cut across the remedial purposes behind section 1983.

### 4. Defendants Will Not Suffer Prejudice if Liability and Damages are Tried in the Same Phase

In their Motion, Defendants argue that "any testimony as to emotional damages suffered by Plaintiffs during the liability phase will only seek to prompt an emotional response from the jury and play on their sympathies . . . [and result in] unfair prejudice to the Defendants." (Def. Mot. at 6:10-16). This argument is erroneous. Plaintiffs' testimony regarding their emotional damages will not "only seek to . . . play on [the jury's] sympathies." To the contrary, Plaintiffs' testimonies regarding their emotional damages are critical to their claims for negligent infliction of emotional distress. To determine liability in this case, the jury will review the videos capturing the fatal shooting of Margarito E. Lopez and hear testimony regarding observations of the shooting and the decedent's resulting injuries and death. Additional testimony by Plaintiffs regarding Margarito T. Lopez's wrongful

death damages and the decedent's loss of life, which Defendants argue should be severed into a separate phase of trial, is unrelated to Margarito T. Lopez's emotional distress and grief, making Defendants' argument unpersuasive. *See* CACI 3921 (Wrongful Death).  Further, this case inherently has emotional elements.  The multiple gunshot wounds will be discussed during the liability presentation at trial. That the violent shooting death of Margarito E. Lopez, captured on video, may evoke a sympathetic response from jurors, does not establish prejudice to Defendants.

### III.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that Defendants' motion be denied and request that the trial be conducted as follows: (1) Phase I— determination of liability, the amount of compensatory damages, and entitlement to punitive damages; (2) Phase II—the amount of punitive damages, if any.

DATED:  June 21, 2024                    LAW OFFICES OF DALE K. GALIPO

By  *s/ Renee V. Masongsong*
Dale K. Galipo
Renee V. Masongsong
Shannon J. Leap
*Attorneys for Plaintiffs*